Ingimar **THORGEIRSSON** and Flight Engineers' International Association, TWA Chapter, AFL–CIO, Petitioners,

v.

**TRANS WORLD AIRLINES, INC.,**
Respondent.

No. 68 Civ. 103.

United States District Court
S. D. New York.

July 30, 1968.

---

O'Donnell & Schwartz, New York City, for petitioners; Asher W. Schwartz, Daniel Kornblum, S. William Barr, New York City, of counsel.

Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for respondent; Herbert Prashker, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

The present proceeding is brought by petitioners, pursuant to §§ 3 First (m), (p), 201, and 204 of the Railway Labor Act, 45 U.S.C. §§ 153 First (m), (p), 181 and 184,* to enforce an award of

---

* 45 U.S.C. § 153 First (m), (p), provides: "§ 153. *National Railroad Adjustment Board—Establishment; composition; powers and duties; divisions; hearings and awards; judicial review*

First. There is established a Board, to be known as the 'National Railroad Adjustment Board', the members of which shall be selected within thirty days after June 21, 1934, and it is provided—

.   *   *   *   *   *   *

(m) The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the award shall be furnished to the respective parties to the controversy, and the awards shall be final and binding upon both parties to the dispute. In case a dispute arises involving an interpretation of the award, the division of the Board upon request of either party shall interpret the award in the light of the dispute.

*   *   *   *   *   *

(p) If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he re-

the Trans World Airlines Flight Engineers' System Board of Adjustment (Flight Engineers' Board). Petitioners and respondent have moved for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow petitioners'

motion for summary judgment is granted while respondent's motion is denied.

The essential facts are not in dispute. Petitioner Flight Engineers' International Association (FEIA) is the duly certified and recognized exclusive bargaining representative of flight engineers employ-

sides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be conclusive on the parties, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: *Provided, however*, That such order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order."

45 U.S.C. § 181 provides:

"§ 181. *Application of sections 151, 152, and 154–163 to carriers by air*

All of the provisions of sections 151, 152, and 154–163 of this title are extended to and shall cover every common carrier by air engaged in interstate or foreign commerce, and every carrier by air transporting mail for or under contract with the United States Government, and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct

the manner of rendition of his service."

45 U.S.C. § 184 provides:

"§ 184. *System, group, or regional boards of adjustment*

The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on April 10, 1936 before the National Labor Relations Board, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes.

It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of sections 181–188 of this title, to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title.

Such boards of adjustment may be established by agreement between employees and carriers either on any individual carrier, or system, or group of carriers by air and any class or classes of its or their employees; or pending the establishment of a permanent National Board of Adjustment as hereinafter provided. Nothing in sections 151–163 and 181–188 of this title shall prevent said carriers by air, or any class or classes of their employees, both acting through their representatives selected in accordance with provisions of sections 181–188 of this title, from mutually agreeing to the establishment of a National Board of Adjustment of temporary duration and of similarly limited jurisdiction."

ed by respondent Trans World Airlines (TWA). Flight Engineers on TWA constitute a separate and autonomous craft and class. Pilots on TWA constitute a separate and distinct craft and class and are represented by the Air Line Pilots Association (ALPA), which is not a party to this proceeding. FEIA and ALPA have separate agreements with TWA.

Petitioner, Ingimar Thorgeirsson, was employed by TWA as a flight engineer from September 27, 1965 to January 9, 1967. It is undisputed that his services as a flight engineer were entirely satisfactory.

On January 9, 1967, Thorgeirsson voluntarily entered training for the position of pilot (first officer). Thorgeirsson's pilot training was terminated on March 3, 1967 because his progress was unsatisfactory. On March 7, 1967, he was dismissed as a TWA employee.

At Thorgeirsson's request, separate grievances were processed under both the ALPA-TWA contract and the FEIA-TWA agreement.

In the ALPA grievance, Thorgeirsson claimed that the pilot training afforded him by TWA was insufficient or inadequate. On or about June 13, 1967, the 4-man TWA-Pilot System Board of Adjustment, sitting without a neutral, denied Thorgeirsson's grievance on the ground that "lack of training was not a factor" in his failure to qualify successfully as a pilot. (See Exhibit G attached to petition.)

In the FEIA grievance, Thorgeirsson requested his reinstatement as a Flight Engineer, with no loss of seniority or salary. The grievance was denied by TWA on March 29, 1967, on the ground that, at the time of his dismissal, Thorgeirsson was a pilot and, therefore, no longer subject to the FEIA agreement. (See Exhibit E attached to the petition.)

Pursuant to § 204 of the Railway Labor Act, Section XX of the FEIA-TWA agreement provides for the establishment of a Flight Engineers' Board of Adjustment, consisting of one member designated by FEIA and one member designated by TWA. In the event of a deadlock in any case, the FEIA-TWA agreement provides for the appointment of an *ad hoc* neutral referee to sit as a member of the Flight Engineers' Board.

The FEIA-TWA agreement defines the jurisdiction of the Flight Engineers' Board as follows (Section XX):

"(A) In compliance with Section 204, Title II, of the Railway Labor Act, as amended, there is hereby established a Board of Adjustment for the purpose of investigating, considering, and determining disputes as defined in paragraph (D) herein, which may arise under the terms of this Agreement and which are properly submitted * * *.

"(D) The Flight Engineer's [sic] Board of Adjustment shall have jurisdiction over disputes between any employee and/or employees hereunder and the Company, growing out of dismissals of employees who have completed their probationary period and grievances or out of the interpretation or application of any provisions in this Agreement. * * *

"(E) The Board of Adjustment shall consider any dispute as defined in paragraph (D) herein * * *.

"(I) When a dispute involving only the application or interpretation of the terms of this Agreement (which shall include a dispute arising from discipline or termination of an employee hereunder other than one still in his probationary period) has been properly submitted to the Board of Adjustment, the Chairman * * * shall set a date for a formal meeting * * * to consider the issue and/or issues presented which shall be within a forty-eight (48) hour period immediately prior to the date such a dispute is set for hearing before the Board and a third neutral member * * * and shall immediately select a neutral member to serve in the event of a deadlock * * *. If the deadlock is not broken * * * the dispute shall be submitted to the Board and a third

neutral member * * *. The decision of the majority of the board sitting with the third member shall be final and binding upon the parties. * * * "

TWA's denial of Thorgeirsson's grievance was appealed to the Flight Engineers' Board, with Professor Michael I. Sovern of Columbia University School of Law sitting as the neutral member.

On January 3, 1968, the Flight Engineers' Board ruled (2–1) that it had jurisdiction to decide the grievance:

"Thorgeirsson claims that his dismissal deprived him of rights guaranteed by the TWA-FEIA contract; the company replies that Thorgeirsson has no rights under that contract. The interpretation and application of that agreement are thus squarely in dispute and this Board exists to decide such disputes.

The point can be seen clearly if 'one supposes that the TWA-FEIA agreement expressly provided for the return to flight engineer duties of any flight engineer who fails his first officer training.' Yet the only difference between this supposed case and the one actually before us is that in the supposed case the right to return is granted expressly whereas in the actual case it is claimed to be granted implicitly.

        *     *     *     *     *     *

Before turning to a consideration of the merits of the case, we pause to note that the Pilots' System Board's rejection of Thorgeirsson's grievance does not conclude the issues before us. That Board's charter limits it to consideration of Thorgeirsson's status as a pilot; it upheld the company's right to end that status. It had no power, nor did it attempt to adjudicate Thorgeirsson's status as a flight engineer." (Award, pp. 2–3.)

On the merits, the Board held that, under the TWA-FEIA contract, flight engineers who enter training to become a pilot do not thereby lose their flight engineers' seniority.

In reaching this conclusion, the Board relied on the fact that the following provision in the parties' 1958 agreement had been deleted from all agreements since 1962:

"A Flight Engineer who accepts another flight assignment within the company which requires his name on another seniority list other than the Flight Engineers' Seniority List shall forfeit all Flight Engineer seniority."

The Board reasoned that "[t]he deletion suggests that the parties no longer intend flight engineers who enter first officer training to lose their flight engineer seniority." (Award, p. 5.) Because Thorgeirsson gave TWA no reason to dismiss him as a flight engineer, he was entitled to reinstatement as a flight engineer with back pay and without loss of seniority.

On January 4, 1968, TWA advised FEIA that it did not intend to comply with the award until directed to do so by a court of competent jurisdiction. On January 9, 1968, the present proceeding was commenced to enforce the award of the Flight Engineers' Board.

■■  The extent to which this Court may review the award of the Flight Engineers' Board is narrowly circumscribed. The TWA-FEIA agreement which created the Flight Engineers' Board pursuant to § 204 of the Railway Labor Act provides:

"The decision of the majority of the board sitting with the third member shall be final and binding upon the parties." (Section XX, par. (I)).

Moreover, the Railway Labor Act requires the District Court to accept the System Adjustment Board's determination of the merits of a grievance. Gunther v. San Diego & Arizona Eastern R. Co., 382 U.S. 257, 263–264, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965); Northwest Airlines, Inc. v. Air Line Pilots Association International, 373 F.2d 136, 140–141 (8th Cir. 1967), cert. denied, 389 U.S. 827, 88 S.Ct. 77, 19 L.Ed.2d 83 (1968); Dominguez v. National Airlines, Inc., 279 F.Supp. 392, 394 (S.D.N.Y.1968);

Gordon v. Eastern Airlines, Inc., 268 F. Supp. 210, 213 (W.D.Va.1967); Brotherhood of Railroad Trainmen v. Denver & Rio Grande Western R. Co., 370 F.2d 833, 836 (10th Cir. 1966). Cf. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The determination by the Flight Engineers' Board that Thorgeirsson retained his seniority as a flight engineer and was entitled to reinstatement is final and conclusive; the Court cannot redetermine this issue.

■ Whether the Board had jurisdiction to render this award is, however, a question open to judicial review. Brotherhood of Railroad Trainmen v. Denver & Rio Grande Western R. Co., supra, 370 F.2d at 836. TWA asserts that the Flight Engineers' Board lacked jurisdiction to hear and determine Thorgeirsson's grievance. In its view, the Railway Labor Act requires that the Flight Engineers' Board can only process grievances of employees represented by FEIA. If grievances of employees represented by ALPA (such as Thorgeirsson was at the time of his discharge) were processed, this would violate the principle of exclusive representation. TWA also argues that the TWA-FEIA agreement creating the Flight Engineers' Board restricts access to that Board solely to flight engineers; and that, because Thorgeirsson was a pilot and not a flight engineer at the time of his dismissal, he was not subject to the TWA-FEIA contract and hence was not able to process grievances to the Flight Engineers' Board.

■ Respondent's jurisdictional arguments, which have been previously rejected in a well-reasoned opinion by the Flight Engineers' Board, are without merit. Neither the Railway Labor Act nor the TWA-FEIA agreement prevents the Flight Engineers' Board from deciding Thorgeirsson's grievance. Thorgeirsson is claiming rights that stem from the status he acquired when employed as a flight engineer under the TWA-FEIA

contract. The Flight Engineers' Board is the only System Board which has authority to interpret and apply this agreement and determine whether a flight engineer who has crossed-over to become a pilot and is then discharged has a contractual right to reinstatement *as a flight engineer*. The fact that Thorgeirsson was not working as a flight engineer when he was discharged does not impair his right to process grievances concerning his flight engineer's status to the Flight Engineers' Board. If this were not so, many other express provisions in the TWA-FEIA agreement providing that flight engineers retain seniority when working in other positions would become unenforceable. (See, §§ XVIII XIII(B), XIII(C), XIII(G), (D) of TWA-FEIA agreement.)

■ Nor does the fact that Thorgeirsson processed a grievance with the Pilots' Board preclude resort to this Flight Engineers' Board. The Pilots' Board only has jurisdiction to adjudicate Thorgeirsson's status as a pilot. It is not empowered to determine his status as a flight engineer under the TWA-FEIA agreement.

■ Allowing Thorgeirsson to process his grievance before the Flight Engineers' Board is not contrary to the principle of exclusive representation. Crossover from one craft or class to another is common to many classifications of employees in the transportation industry covered by the Railway Labor Act. It is not uncommon for these employees to possess and assert seniority and other rights in two crafts, each of which is represented by different bargaining representatives. Therefore, there can be more than one appropriate bargaining unit in which the employee has enforceable seniority rights. See, Brotherhood of Railroad Trainmen v. Smith, 251 F.2d 282 (6th Cir.), cert. denied, 356 U.S. 937, 78 S.Ct. 778, 2 L.Ed.2d 812 (1958).

We hold that the Flight Engineers' Board had jurisdiction to adjudicate

Thorgeirsson's grievance under the TWA-FEIA agreement.

Petitioners' motion for summary judgment is granted. Respondent's motion for summary judgment is denied.

So ordered.