**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, an unincorporated association**

v.

**CAPITOL INTERNATIONAL AIRWAYS, INC., a corporation.**

**Civ. A. No. 6163.**

United States District Court, M. D. Tennessee, Nashville Division.

Nov. 22, 1971.

Cohen, Weiss & Simon, New York City, Cecil D. Branstetter, Branstetter, Moody & Kilgore, Nashville, Tenn., Robert Samardick, Des Plaines, Ill., for plaintiff.

Wilson Sims, Bass, Berry & Sims, Nashville, Tenn., for defendant.

## MEMORANDUM

MORTON, District Judge.

This is a motion for summary judgment seeking specific performance of an arbitration award pursuant to a collective bargaining agreement between the parties to this lawsuit. This action for enforcement of an arbitration award arose under the Railway Labor Act, as amended, 45 U.S.C. § 151 et seq.

This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1337. The matter in controversy exceeds the sum and value of $10,000, exclusive of interest and costs.

Plaintiff Air Line Pilots Association, International (hereinafter referred to as ALPA) is an unincorporated association organized for the purposes and objectives of a labor organization. ALPA is a "representative," as defined in Section 1, Sixth of the Act, 45 U.S.C. § 151, Sixth.

Defendant Capitol International Airways, Inc. resides and is doing business within the judicial district of the Middle District of Tennessee, with offices at Smyrna, Tennessee. Defendant is a "common carrier by air engaged in interstate or foreign commerce," as defined and used in Section 201 of the Railway Labor Act, 45 U.S.C. § 181, and is subject to the provisions of the Act.

A dispute between the parties to this lawsuit arose under the collective bargaining agreement. Pursuant to Section 204 of the Railway Labor Act, 45 U.S.C. § 184, the disputes were properly submitted to the Pilots' System Board of Adjustment, which per Nicholas H. Zumas, Esq., neutral member of the Board, rendered a decision and award in favor of grievant Paul J. Spivack, a member of ALPA. In this lawsuit, ALPA seeks specific performance of this decision and award. The facts relevant to this action as found by the System Board of Adjustment, Case Nos. CHI-1-69 and CHI-62-69, at 1-3, are as follows:

"Carrier [Capitol International Airways, Inc.] is a supplemental air carrier, operating charter flights throughout the world. During the period in controversy, Carrier was flying DC-8 and C-46 aircraft. With the exception of military contracts, Carrier's business is primarily seasonal composed of summer charter flights to Europe. During the winter months, about half of Carrier's pilots, numbering approximately one hundred, are furloughed.

"Grievant was hired by Carrier as a co-pilot on C-46 aircraft in April of 1966. As of January 1, 1969, Grievant was number 75 on the seniority list. Prior to March of 1968, Grievant was based in Frankfurt, Germany, flying the C-46 aircraft.

"In March of 1968, a vacancy became available in Wilmington, Delaware, for co-pilot training on the DC-8. Grievant successfully bid the vacancy, reported to Wilmington and commenced ground school training in April of 1968. After ground school training, Grievant successfully completed simulator training at Miami, Florida. After a three-week waiting period he began flight training on the DC-8. Because of the unavailability of DC-8 aircraft for training, Grievant received only one hour of flight training. He was then sent back to Frankfurt, due to operational necessity, to fly as co-pilot on the C-46. After flying the C-46 for approximately 15 days, Grievant was returned to Wilmington to resume DC-8 flight training. No flight training was given, however, and a week later was again returned to Frankfurt to fly the C-46 aircraft until the end of August, 1968.

"After a brief vacation during the first two weeks in September (during which time Grievant earned a DC–3 type rating and the airline pilot's license), Grievant was again returned to Frankfurt to fly C–46 aircraft from September 17 until September 26. At the end of September, Grievant came back to Wilmington, was advised by Carrier that there would be no further flight training until December, and was furloughed effective October 1, 1968.

"During all of this period, Grievant held a bid for the Wilmington base. Grievant testified that during this period he verbally protested Carrier's action to the Chief Pilot and to the Chief of Operations.

"Pilots, junior in seniority to Grievant, were allowed to complete their DC–8 flight training, and were checked out as DC–8 co-pilots during the time that Grievant was sent to Frankfurt to fly the C–46 aircraft. Those were pilots who had come either from the U. S. Air Force or other carriers.

"Sometime in November of 1968, Grievant became aware that three pilots junior in seniority who were recalled from furlough to fly DC–8 aircraft. [sic] Grievant contacted Carrier officials about this and was informed that there would be no DC–8 flight training in December and that Grievant would not receive any 'bypass pay' for being passed over. On December 23, 1968, a grievance was filed. (CHI–1–69) On January 2, 1969, Grievant received a telegram from Carrier canceling his leave of absence, and ordering him to return to Frankfurt. Relying on legal counsel from the Organization (ALPA), Grievant was advised that under the Agreement, he had a period of three years within which to answer the recall. Grievant did not meet the recall, and Carrier terminated his services by letter dated February 13, 1969. Grievant filed a second grievance (CHI–62–69) protesting the discharge."

Defendant conceded in open court that the question of timeliness under grievance CHI–1–69 is a procedural question to be determined by the arbitrator. Thus, defendant does not contest the ruling and award of the arbitrator under grievance CHI–1–69 that Capitol, by refusing to recall Spivack in order of seniority, violated Sections 18 and 24 and other related provisions of the bargaining agreement.

Defendant, however, does contest the ruling and award of the arbitrator under grievance CHI–62–69. In this grievance, the arbitrator ruled that Spivack as a furloughed pilot was entitled to recall from furlough even though he failed to answer the notice of recall within two weeks. The arbitrator ruled that defendant wrongfully discharged the grievant Paul J. Spivack for failing to answer the notice of recall within two weeks.

The arbitrator based his decision on his interpretation of Sections 24(c) and 24(e) of the bargaining agreement, which sections read as follows:

## "DEMOTIONS AND REDUCTION OF PERSONNEL
## SECTION 24

\* \* \* \* \* \*

"(c) The right of preference to re-employment shall expire at the end of three (3) years from the date of last furlough.

\* \* \* \* \* \*

"(e) A furloughed pilot shall not be entitled to recall and reinstatement preference if he does not return to the service of the Company within two (2) weeks after notice to do so has been sent by registered mail or telegram to the last address filed with the Company."

The neutral arbitrator of the System Board of Adjustment, interpreted the two provisions as follows:

"There is no provision under Section 24(e) for termination for failure to respond to a recall, and, unlike provisions in other agreements, there is

no provision for forfeiture of seniority. A pilot's seniority and right to reemployment are preserved for a period of three years under the provisions of Section 24(c).

"Absent specific language granting a right to terminate for failure to respond to a recall, there is no basis for such under Section 24(e). To hold otherwise, Section 24(c) would be meaningless. Accordingly, the Board finds that Carrier violated the Agreement by terminating Grievant under the circumstances."

Provision (e) of the Supplemental Agreement between the parties to this lawsuit states the System Board of Adjustment's jurisdiction.

"(e) The Board shall have jurisdiction over disputes between any employee covered by the Pilots' Agreement and the Company, growing out of grievances or out of interpretation or application of any of the terms of the Pilots' Agreement . . . . "

Provision (*l*) of the Supplemental Agreement provides:

"Decisions of the Board in all cases properly referable to it shall be final and binding upon the parties thereto."

The Court's scope of review of this decision and award of the arbitrator is very limited. The Supreme Court in United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), pronounced the role of the courts in an action to enforce an arbitration award:

"It is the arbitrator's construction that was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."

The Court disagrees with the decision of the arbitrator in the construction of the provisions of the agreement. However, the parties bargained for the construction of the arbitrator and to this construction the parties are bound.

The Court hereby grants plaintiff's motion for summary judgment. The Court grants specific performance of the arbitration award entered on July 10, 1970. The Court refers back to the arbitrator the determination of the specific monetary sum due Paul J. Spivack under grievances CHI–1–69 and CHI–62–69.

The Court also refers to the arbitrator the determination of the specific monetary sum due to Paul J. Spivack by defendant Capitol International Airways, Inc. for wrongfully discharging Spivack for the period dating from the date of the entry of the arbitration award, July 10, 1970, until such time as defendant shall recall Spivack.

The Court hereby enjoins the defendant to pay to Paul J. Spivack the specific monetary sum determined by the arbitrator to be payable under grievance CHI–1–69 and grievance CHI–62–69.

The Court hereby enjoins the defendant Capitol International Airways, Inc. to pay to Paul J. Spivack the specific monetary sum determined by the arbitrator to be payable for its wrongful discharge of Spivack for the period dating from the date of the entry of the arbitration award, July 10, 1970, until such time as defendant shall recall Spivack.

The Court hereby enjoins the defendant Capitol International Airways, Inc. to reinstate the grievant, Paul J. Spivack, in its service, with no loss of seniority rights.