**NORTHWEST AIRLINES, INC.,**
**Plaintiff,**

v.

**AIR LINE PILOTS ASSOCIATION, IN-**
**TERNATIONAL, Defendant.**

**Civ. A. No. 829–73.**

United States District Court,
District of Columbia.

Nov. 21, 1974.

David A. Ranheim, Henry Halladay, Minneapolis, Minn., John L. Richardson, Washington, D. C., for plaintiff.

Stephen B. Moldof, Henry Weiss, Robert S. Savelson, New York City, Donald J. Capuano, Washington, D. C., for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This suit concerns the validity of an arbitration award made pursuant to section 204 of the Railway Labor Act, 45 U.S.C. § 184 (1970), involving a seniority grievance following a strike. The parties are now before the court on cross-motions for summary judgment. A brief recitation of the facts of the case is useful in arriving at a clear understanding of the issues.

Plaintiff Northwest Airlines, Inc. (NWA) is a common carrier engaged in interstate commerce and is subject to the provisions of the Railway Labor Act, 45 U.S.C. § 151 et seq. (1970). Defendant Air Line Pilots Association, International (ALPA) is a labor organization recognized for collective bargaining purposes as representative of pilots in the employ of NWA. Section 204 of the Railway Labor Act, 45 U.S.C. § 184 (1970), establishes the procedure by which contractual interpretation and application are to be determined for airlines and their employees. *See* International Association of Machinists, AFL–CIO v. Central Airlines, Inc., 372 U.S. 682, 685–686, 83 S.Ct. 956, 10 L. Ed.2d 67 (1963). Pursuant to the mandate of § 204 Northwest and ALPA have, by agreement, established the NWA Pilot's System Board of Adjustment for the purpose of adjusting and deciding disputes which may arise under the terms of the Pilots Agreement. The Board consists of five members, two appointed by the company, two by the Association, and a neutral member, selected by agreement or appointed by the National Mediation Board for each dispute. The neutral member is Chairman of the Board and presides at meetings and hearings, guiding the parties in the presentation of their evidence. A majority vote of the Board is final, binding and conclusive.

In accordance with the Agreement, Northwest and ALPA submitted to the Board a dispute concerning the airline's selection and use of pilot instructors during a strike by a separate craft group in 1970. The basic issue was whether there was an obligation on the part of the company to select its instructors only from those pilots on active payroll status, or whether it might hire both active and furloughed pilots. ALPA contended that the company had an obligation, based on past practice and the apparent acquiescence of the company, to hire only active pilots. Northwest contested this assertion, arguing that nothing in the Agreement, past practice, or actions of the parties prohibited the airline from selecting its instructors either from active or furloughed pilots. A primary bone of con-

tention was a letter of June 19, 1969 from Northwest's Director of Flight Training to ALPA's Chairman of the Master Executive Council which indicated that Northwest had selected and would continue to select instructor pilots from those on the "pilot seniority list." The company claims that this was merely an agreement not to "hire off-the-street" while ALPA viewed it as support for its contention that only active pilots would be hired.

A hearing on this grievance was held on June 17, 1971. George A. Stone and Herman P. Muto were the ALPA representatives on the Board; Albert E. Floan and Stewart G. Lee were the Northwest representatives; and Nicholas H. Zumas, an attorney, was the neutral member. After the hearing Board members received copies of the hearing transcript and exhibits, and post-hearing memoranda were submitted by counsel for ALPA and Northwest. The Board was convened twice in executive session to review the matter and at the second session the Northwest members moved to reopen the hearings to take further evidence regarding past practice in selecting pilot instructors. That motion was later denied in writing by the neutral. On October 10, 1972 Zumas sent a signed original of his award to Floan, who was secretary of the Board, for distribution to the other members and for their signatures. That award contained a finding that the parties agreed that reference to a pilot seniority list in the letter of June 19, 1969 was limited to those pilots on the active roster. The parties, in their pleadings, acknowledge that no such agreement was made.

The award concluded that the letter of June 19 indicated a commitment by the company to hire instructor pilots only from those pilots on active status unless they were not qualified. Thus the

neutral sustained ALPA's position on the grievance and Northwest was directed to compensate senior pilots on a "one-for-one" basis [1] if they were passed over for employment. Since the neutral also concluded that the evidence presented concerning two other matters, the provisions of the agreement and the understanding between the parties, was insufficient to show that the company had hired out-of-seniority, the award appears to be based on an erroneous finding of fact.

There was a space of several months between the time the arbitrator issued his award (Oct. 1972) and the time the second ALPA representative signed the award and made it final (Feb. 1973). Northwest claims that during this time ALPA Board members knew of the erroneous finding but did not inform the neutral or do anything to correct it. Floan, a Northwest representative, called this matter to the attention of Zumas, discussed it with ALPA representatives and attempted to enlist the aid of the Northwest and ALPA legal departments. He also apparently withheld distribution of the award to the ALPA Board members. There was considerable discussion and communication, not completely without acrimony, as Northwest attempted to have the erroneous finding corrected. ALPA was agreeable to some change in the language of the award, but not to the extent that the result would be altered. ALPA Board members eventually obtained and signed copies of the award and it was forwarded to the National Mediation Board for filing. Northwest has refused to comply with the order and has brought this action seeking to set aside the award.

■ Normally courts are most reluctant to intervene in labor arbitration matters. In 1960, in a series of cases labeled the Steelworkers Trilogy,[2] the

---

1. Normally the airline must select the most senior qualified pilot. For each junior pilot selected the company must pay the senior pilot who would otherwise have been selected.

2. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct.

1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

Supreme Court enunciated a clear policy of encouraging arbitral resolution of labor disputes by limiting judicial review of arbitration awards. The Supreme Court stated:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed. 2d 1424 (1960).

See Union Employers Division of Printing Industry of Washington, D. C. v. Columbia Typographical Union, 353 F. Supp. 1348, 1349 (D.D.C. 1973), aff'd, 492 F.2d 669 (D.C.Cir. 1974). This rationale has been incorporated in the Railway Labor Act itself which requires the district court to accept the System Adjustment Board's determination of the merits of the grievance. See Thorgeirsson v. Trans World Airlines, 288 F.Supp. 71, 75–76 (S.D.N.Y.1968); 45 U.S.C. § 153 (1970). The Act provides in essence that the district court shall have jurisdiction to review an award of a Board only for failure of the Board to comply with the statute, for failure of the order to conform or confine itself to the jurisdiction of the Board, or for fraud or corruption by a member making the order. 45 U.S.C. § 153, subd. 1 (q) (1970). While that section deals with railroad boards, plaintiff concedes that courts look to it in examining awards under the air transport regulations. See International Association of Machinists, AFL–CIO v. Central Airlines, Inc., supra; Rossi v. Trans World Airlines, 350 F.Supp. 1263, 1269 (C.D. Cal.1972). Northwest contends that the court may review the present award since Northwest was denied due process, and since the actions of the ALPA Board members taken subsequent to Zumas' issuance of the award were tantamount to fraud. Plaintiff also contends

that the award can be reviewed since it is wholly baseless and without reason.

Plaintiff has failed to show any action on the part of the neutral which would constitute denial of due process or of a fair and impartial hearing. A full hearing was conducted and two executive sessions were held. Although Zumas refused to allow reopening for further evidence that in no way constituted an abuse of discretion since it was within his authority to determine at what point the evidence submitted was sufficient. See Catz American Co. v. Pearl Grange Fruit Exchange, Inc., 292 F.Supp. 549, 553 (S.D.N.Y.1968). The court can discern no evidence of partiality on the part of the neutral which could be construed as a denial of due process by the Board. See Rosen v. Eastern Air Lines, Inc., 400 F.2d 462 (5th Cir. 1968), cert. denied, 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560 (1969).

Northwest also contends that the ALPA Board members had a duty to notify the neutral that his finding was in error and that by signing an award containing an erroneous finding the members perpetrated fraud upon Northwest. Although plaintiff uses the term fraud in a general sense it is a specific tort, requiring proof of false representation, in reference to a material fact, made with knowledge of its falsity and with intent to deceive. In addition, action must be taken in reliance upon the representation. United States v. Kiefer, 97 U.S.App.D.C. 101, 228 F.2d 448, cert. denied, 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815 (1956); Sankin v. 5410 Connecticut Avenue Corp., 281 F. Supp. 524, 545 (D.D.C.1968), aff'd sub nom. Benn v. Sankin, 133 U.S.App.D.C. 361, 410 F.2d 1060 (1969) cert. denied, 396 U.S. 1041, 90 S.Ct. 681, 24 L.Ed.2d 685 (1970). Only by the most strained construction of these elements could a claim of fraud be made out in the present case. Admittedly fraud may arise from an omission as well as an explicit misrepresentation, see Gibbons v. Brandt, 170 F.2d 385, 391 (7th Cir.

1948), cert. denied, 336 U.S. 910, 69 S. Ct. 517, 93 L.Ed. 1074 (1949), but plaintiff has the burden of proving an arbitrator's misconduct. *See* Catz American Co. v. Pearl Grange Fruit Exchange, Inc., *supra,* 292 F.Supp. at 551–552. Northwest has not met the burden of proving that the ALPA Board Members were under an obligation to inform the neutral of an erroneous finding. In the general arbitral situation in which each party appoints representatives to the Board and the neutral is selected by them or by a disinterested third-party, the representatives of the parties cannot be expected to play a wholly impartial part. "They are partisans once removed from the actual controversy." Stef Shipping Co. v. Norris Grain Co., 209 F.Supp. 249, 253 (S.D.N.Y.1962).[3] It is commonly accepted that the party-designated arbitrators are not and cannot be neutral in the sense that the independent arbitrator or a judge is. Moreover, members should not be required to agree with all of the findings of the arbitrator prior to affixing their signatures to the award, and even though the ALPA members concede the substantial factual error in the award they nonetheless agreed with its outcome. *See* letter of February 15, 1973 from H. P. Muto and George Stone to James E. Conway. It, therefore, is apparent that plaintiff seeks to have this court review the findings of the arbitrator on the merits.

■ The Supreme Court has emphasized the final nature of System Board awards on several occasions. *See* Gunther v. San Diego & Arizona Eastern Railway Co., 382 U.S. 257, 263–264, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965); Brotherhood of Railroad Trainmen v. Chicago

River & Indiana Railroad Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957). The Court of Appeals for the District of Columbia Circuit, in a frequently cited opinion also spoke to this issue stating:

> ". . . we do not believe Congress intended that [adjustment board awards] should be circumvented by free resort to judicial review or determination de novo of the merits of the controversy."

Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 124 F.2d 235, 240 (1941), aff'd by an equally divided court, 319 U.S. 732, 63 S.Ct. 1430, 87 L.Ed 1694 (1943). *See* Bower v. Eastern Airlines, 214 F.2d 623, 625–626 (3rd Cir.), cert. denied, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685 (1954). Therefore, a claim by a party that the award was based on erroneous conclusions of law or fact or on insufficient supporting facts will not be upheld. Edwards v. St. Louis-San Francisco Railroad Co., 361 F.2d 946, 952 (7th Cir. 1966); Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, 312 F.2d 299, 300 (2d Cir.), cert. denied, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963). This is so regardless of the degree to which the arbitrator's views on the facts and the law might be open to question. United States for Use and Benefit of Chicago Bridge & Iron Co. v. Ets-Hokin Corp., 284 F.Supp. 471, 476 (N.D.Cal. 1966), aff'd, 397 F.2d 935 (9th Cir. 1968). Indeed one court has stated frankly that "errors of judgment on the part of arbitrators are an arbitration risk." Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co., 20 F.R. D. 359, 362 (S.D.N.Y.1957).

■ As the neutral arbitrator of the System Adjustment Board, Zumas di-

---

3. This view draws support from the decision of the Second Circuit in D'Elia v. New York, New Haven & Hartford Railroad Co., 338 F.2d 701 (2d Cir. 1964), cert. denied, 380 U.S. 978, 85 S.Ct. 1340, 14 L.Ed.2d 272 (1965). Under the Railway Labor Act complaints are heard by the National Railroad Adjustment Board, composed of company and union representatives. Only in a case of deadlock is a neutral referee appointed. 45 U.S.C. § 153 (1970). The court held that under the Act the plaintiff was entitled to a completely impartial hearing only when the case reached the referee designated to sit with the Board. As long as the final hearing officer was impartial the requirements of due process were satisfied. 338 F.2d at 702. *See* McDonald v. Penn Central Transportation Co., 337 F.Supp. 803, 806 (D.Mass.1972).

rected the hearings and prepared his award, interpreting the facts and the law. As indicated above, this court's review of his award is accordingly limited. See Airline Pilots Ass'n, International v. Capitol International Airways, Inc., 343 F.Supp. 923, 926 (M.D.Tenn. 1971), aff'd, 458 F.2d 1349 (6th Cir. 1972). The general prohibition on review of the merits of a decision, reinforced by the language of § 153, subd. 1 (q), would appear to preclude any review whatsoever of the merits of an award. However, in the arbitration context the provision that an award may be reviewed if the arbitrator has exceeded his jurisdiction has been construed to encompass awards which are "without foundation in reason or fact." See Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co., 415 F. 2d 403, 411–412 (5th Cir. 1969), cert. denied, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970). The court, therefore, consistent with the statute, might set aside an award where the Board's interpretation is wholly baseless and without reason. See Keay v. Eastern Airlines, Inc., 440 F.2d 667, 668 (1st Cir. 1971); McDonald v. Penn Central Transportation Co., supra, 337 F.Supp., at 806. It is exactly this action which the plaintiff seeks.

 The standard laid out above is a stringent one and it does not mean simply that if the award is supported by insufficient facts it may be set aside. As the Court of Appeals for the Fifth Circuit pointed out in Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co., supra, the requirement that the result of arbitration have a foundation in fact means that the award must, in some logical way, be derived from the wording or purpose of the contract. 415 F.2d at 412. If there is no rational way to explain the remedy handed down by the arbitrator as a logical means of furthering the aims of the contract then the award is without foundation in reason or fact and it exceeds the arbitrator's jurisdiction. In United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, the Court noted that while

the arbitrator was bound by the collective bargaining contract he could look to many sources of guidance in determining his award and unless his words manifested an infidelity to that obligation, a court must enforce the award. 363 U.S. at 597, 80 S.Ct. 1358.

The court can find no such blatant disregard on the part of the neutral for the contract or for his duty, and is of the opinion that the arbitrator's award of out-of-seniority pay was clearly contemplated by the contract and designed to further its aims. It was indeed the remedy specifically sought by plaintiff. Therefore the court does not find that the arbitrator has exceeded his jurisdiction or that the court may review the substance of his award.

This view is reinforced by the nature of the evidence which the court would be required to consider. Plaintiff's primary proof would be the testimony of the neutral arbitrator himself and the testimony of the other members of the System Board. See Hearing Transcript at 21–24, 32, 43–44. A situation analogous to this was considered by the court in Gramling v. Food Machinery and Chemical Corp., 151 F.Supp. 853 (W.D. S.C. 1957). The court noted there that the testimony of an arbitrator tending to impeach the award is incompetent and should be rejected.

"Therefore, the general rule is that the testimony of an arbitrator is not admissible to impeach his own findings, and where the arbitrators recite in the award itself that they have disposed of the matters submitted to them for arbitration as was proper under the provisions of the agreement for submission, the parol testimony of one, or more, or all, of the arbitrators will not be received to impeach their award and its recitals." 151 F.Supp. at 861.

The court in Gramling refused to consider the affidavits of two of the arbitrators tendered by defendant, refused to require the arbitrators to appear for the purpose of testifying in regard to their

deliberations, and confirmed the award. There is merit to the observation of the court in *Gramling* that the "deliberations of an arbitration board are as much a part of the judicial process as the deliberations of a jury and should be as zealously protected." 151 F.Supp. at 860. It is perhaps more accurate to describe the arbitrator as a judge, *see* Safeway Stores v. American Bakery and Confectionery Workers International Union, 390 F.2d 79, 84 (5th Cir. 1968), and therefore it is even less appropriate to attempt to probe his decisional processes. Indeed, the neutral himself held this view and stated at his deposition:

> "Being in a quasi-judicial capacity, I don't think it is possible for anyone to inquire as to my state of mind and to the discussions which were free and open and presumed to have been in strictest confidence to be spread out on the table.

> It's as though one inquires of a federal judge what notes he had that precipated his conclusion. I think the award speaks for itself." Zumas deposition tr. 48–49.

> \* \* \* \* \* \*

> "I am unwilling unless a court orders me to do so to divulge anything that is reflected in those notes." Zumas deposition tr. 51–52.

In light of the above the court will not review the correctness of the Board's decision under the guise of determining whether or not the Board complied with the requirements of § 153. *See* McDonald v. Penn Central Transportation Co., 337 F.Supp. 803, 805 (D.Mass. 1972).

▆▆▆▆ As a final matter the defendant, as prevailing party, seeks to recover its attorney's fees; however, such fees are recoverable only in exceptional circumstances. *See* Air Line Pilots Ass'n, International v. Northwest Airlines, Inc., 415 F.2d 493 (8th Cir. 1969), cert. denied, 397 U.S. 924, 90 S.Ct. 931, 25 L.Ed.2d 103 (1970). No evidence of exceptional circumstances appearing, the court is of the opinion that justice would be served best in this particular case by denying defendant's request.

The parties having demonstrated no genuine issue of material fact in dispute, the court will, therefore, grant summary judgment for defendant Air Line Pilots Association, International. An appropriate Judgment accompanies this Memorandum Opinion.

## JUDGMENT

This matter came before the court on cross-motions for summary judgment. It appearing that there exists no genuine issue of material fact, and it appearing that defendant is entitled to judgment as a matter of law, and in accordance with the Memorandum Opinion issued with this Judgment, it is this 21st day of November, 1974,

Ordered that the motion of defendant Air Line Pilots Association, International for summary judgment as it pertains to enforcing the Award of the Northwest Airlines Pilots' System Board of Adjustment in the "out-of-seniority grievance" be, and the same hereby is, granted; and it is further

Ordered that plaintiff's motion for summary judgment on the same issue be, and the same hereby is, denied; and it is further

Ordered that plaintiff Northwest Airlines, Inc., its officers, employees and agents immediately comply with the requirements imposed upon the company by the above-mentioned Award; and it is further

Ordered that plaintiff Northwest Airlines, Inc. pay interest at the rate of six percent per annum on all monies owing since the date of the System Board Award until the date upon which payment is made in accordance with this Judgment; and it is further

Ordered that defendant's motion for summary judgment as it relates to attorney's fees be, and the same hereby is, denied.