NORTHWEST AIRLINES,. INC., Appellant,

v.

AIR LINE PILOTS ASSOCIATION INTERNATIONAL.

NORTHWEST AIRLINES, INC.,

v.

AIR LINE PILOTS ASSOCIATION INTERNATIONAL, Appellant.

Nos. 75–1022 and 75–1095.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 16, 1975.

Decided Feb. 3, 1976.

Rehearing Denied Feb. 27, 1976.
Certiorari Denied June 14, 1976.
See 96 S.Ct. 2663.

Philip A. Lacovara, Washington, D. C., with whom David A. Ranheim, Minneapolis, Minn., was on the brief for appellant in No. 75–1022 and appellee in No. 75–1095.

Stephen B. Moldof, New York City, of the Bar of the Court of Appeals of New York, pro hac vice by special leave of court, with whom Robert S. Savelson, New York City, and Donald J. Capuano, Washington, D. C., were on the brief for appellant in No. 75–1095 and appellee in No. 75–1022. Michael E. Abram, Hartsdale, N. Y., and Glenn V. Whitaker, Washington, D. C., also entered appearances for appellant in No. 75–1095 and appellee in No. 75–1022.

Before BAZELON, Chief Judge, CLARK,* Associate Justice of the Supreme Court of the United States, and ROBINSON, Circuit Judge.

Opinion for the Court filed by Chief Judge BAZELON.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(a) (1970).

BAZELON, Chief Judge:

Appellant Northwest Airlines brought this suit to set aside an arbitration award to the Air Line Pilots Association pursuant to the Railway Labor Act.[1] Although the district court concluded that the award was predicated on a dispositive mistake of fact, it granted the Association's motion for summary judgment, holding that it lacked power to review an arbitrator's findings on the merits "regardless of the degree to which the arbitrator's views on the facts and the law might be open to question."[2] We reverse.

### I

The facts are fully set forth in the district court's reported opinion.[3] It suffices to say that the arbitration board's opinion turns on the meaning of the term "pilot seniority list" in a 1969 letter from the company to the union. The board deemed it unnecessary to decide that issue, stating: "It is agreed that the reference to 'pilot seniority list' in the letter does not include furloughed pilots, but is limited to those pilots on the active roster."[4] This "agreement" was allegedly arrived at between the company and union representatives during the board's first executive session.[5] However, the district court found, and it is essentially undisputed, that in fact "no such agreement was made."[6]

### II

We think that granting relief in this case would not undermine the established policy of settling labor disputes through arbitration by opening up the merits of arbitration decisions to judicial review.[7] The board's opinion does not rest on an allegedly erroneous determination of an issue of fact or law on the record before it.[8] It rests, instead, on the removal of a dispositive issue of fact from the board's jurisdiction, based on a nonexistent stipulation between the parties.

1. 45 U.S.C. § 151 (1970) *et seq.*

    In 1936, Congress brought air carriers under the statute, 49 Stat. 1189, as amended, 45 U.S.C. § 181 (1970) *et seq.*

    Pursuant to 45 U.S.C. § 184, Northwest Airlines ("the company") and the Air Line Pilots Association ("the union") have established by agreement a System Board of Adjustment with authority to settle disputes arising out of their collective bargaining agreement. The board is composed of two members designated by the company, two members designated by the union, and one "neutral member" selected by the parties jointly, or, if they cannot agree, by the National Mediation Board. J.A. 13–21.

2. *Northwest Airlines, Inc. v. Air Line Pilots Ass'n,* 385 F.Supp. 634, 639 (D.D.C.1974).

3. *Id.*

4. J.A. 36.

5. J.A. 47. *See supra,* note 1.

6. *Northwest Airlines, Inc. v. Air Line Pilots Ass'n, supra,* note 2, 385 F.Supp. at 636, 638.

    Union counsel conceded in argument before the district court, "There is no question that the stipulation was not arrived at, Your Honor." J.A. 91. At the court's suggestion, a formal stipulation was filed to the effect that the union-appointed board members "do not recall and are not aware of any stipulation made during the executive sessions." J.A. 119, 125. Moreover, the "pilot seniority list" apparently referred to was itself admitted into evidence and was the subject of testimony before the board. J.A. 25, 42–45, 131. Contrary to the alleged "agreement," it contains the names of both active and furloughed pilots.

    It has been suggested in this court, however, that simply because the union-appointed board members "do not recall" an agreement, it does not follow that none was reached. No binding agreement can exist between a party who strenuously denies it was ever made and another who is unaware of its existence.

7. *See, e. g., United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

8. *But cf. Gunther v. San Diego & Ariz. E. Ry.,* 382 U.S. 257, 261, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965); *Electronics Corp. of America v. Int. Union of Electrical Workers,* 492 F.2d 1255 (1st Cir. 1974); *Brotherhood of R. R. Trainmen v. Central of Ga. Ry.,* 415 F.2d 403, 414 (5th Cir. 1969), *cert. denied,* 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970); *Procter & Gamble Mfg. Co. v. Independent Oil Workers,* 386 F.Supp. 213, 225 (D.Md.1975) (court may set aside arbitrator's award if "wholly baseless and completely without reason").

Courts retain power to set aside arbitration awards "for failure of the order to conform, or confine itself, to matters within the scope of the [board's] jurisdiction."[9] When an arbitration board ventures outside the scope of the authority conferred on it by the collective bargaining agreement, it lacks power to bind the parties.[10] Similar considerations mandate court intervention when an arbitration panel mistakenly assumes that certain issues are not before it. There too the board's award does not derive its force from the agreement between the parties, since the board's resolution of the controversy is fatally flawed by a misunderstanding of its assigned task.

This is not to say that courts may lightly disturb interpretations by arbitrators as to what disputes are arbitrable under the language of a contract. The arbitrator made no such determination here, and the policies which mandate deference to substantive decisions by arbitrators are inapplicable if a mistake of fact has led the arbitrator not to resolve the issues tendered.

We hold only that where, as here, an undisputed mistake of fact causes an arbitrable issue to be removed from arbitration, a court has both the power and the duty to refuse to enforce the award. We therefore reverse and remand to the district court with directions to set aside the award of the System Board of Adjustment and remand this matter for reopening in further proceedings consistent with this opinion.[11]

*So ordered.*

---

**9.** Section 3 of the Railway Labor Act, 45 U.S.C. § 153, subd. First, (p); *id.,* (q) (1970).

While this section applies directly only to railroad boards, the union concedes the courts look to it for guidance in assessing awards by air transport boards as well. *See* 385 F.Supp. at 637; Appellee's brief at 17, 59. *See also, Int. Ass'n of Machinists v. Central Airlines,* 372 U.S. 682, 694–95, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963); *Bower v. Eastern Airlines,* 214 F.2d 623 (3rd Cir.), *cert. denied,* 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685 (1954); *Rossi v. Trans World Airlines,* 350 F.Supp. 1263 (C.D.Cal. 1972), *aff'd,* 507 F.2d 404 (9th Cir. 1974); *Gordon v. Eastern Airlines,* 268 F.Supp. 210 (W.D. Va.1967).

**10.** . . . an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. . . . [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers v. Enterprise Wheel & Car Corp., supra,* note 7, 363 U.S. at 597, 80 S.Ct. at 1361.

The district court was not unaware of this line of authority, but construed it narrowly as applying only to the types of remedies available. Noting that the remedy in this case was of a type "clearly contemplated by the contract and designed to further its aims," the district court concluded that therefore the arbitrators had not exceeded their jurisdiction. 385 F.Supp. at 639.

Although remedies were at issue in the *Enterprise Wheel & Car* case itself, we do not think the principle that the arbitrator's authority must derive from the agreement can be so limited. *See also Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974).

**11.** Arbitration proceedings by their nature are not generally amenable to the remedy of a remand. *See Washington-Baltimore Newspaper Guild v. Washington Post Co.,* 143 U.S. App.D.C. 210, 442 F.2d 1234, 1238–39 (1971). There a decision had already been rendered on the record before the arbitrator. Because the parties had agreed to private arbitration, in which the subpoena power is lacking, certain evidence was not originally available. We concluded that to remand for additional evidence would be to give one side "more than the benefit of its bargain." *Id.*

In this case, however, remand is necessary if the parties are to receive what they bargained for—a board decision resolving their arguments and evidence one way or the other, as opposed to relying on a non-existent stipulation of dispositive fact.