577 F.Supp. 487 (1983)
OZARK AIR LINES, INC., Plaintiff,
v.
AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Defendant.
No. 83-1617C(A).
United States District Court, E.D. Missouri, E.D.
December 8, 1983.
*488 Donald J. Meyer, Clayton, Mo., for plaintiff.
Charles A. Werner, St. Louis, Mo., Daniel S. Kozma, R. Russell Bailey, Washington, D.C., for defendant.

MEMORANDUM AND ORDER
HARPER, District Judge.
This matter is before the Court on the cross-motions for summary judgment of plaintiff and defendant, respectively.
Plaintiff, Ozark Air Lines, Inc., (hereinafter referred to as Ozark), is an air carrier operating in interstate commerce, as defined in the Railway Labor Act. Sec. 45 U.S.C. § 181. Ozark filed a complaint asking this Court to vacate an award entered by a neutral referee sitting on the airline's systems board of adjustment. Ozark's board is a system adjustment board created by the parties to the collective bargaining agreement, as required by 45 U.S.C. § 184. The defendant, Air Line Pilots Association, International (hereinafter referred to as ALPA), answered plaintiff's complaint with a counterclaim for enforcement of the award.
This Court has jurisdiction over this matter under the Railway Labor Act, 45 U.S.C. §§ 151-188. See I.A.M. v. Central Airlines, Inc., 372 U.S. 682, 685, 83 S.Ct. 956, 958, 10 L.Ed.2d 67 (1963).
The facts leading up to this dispute are without controversy. In 1978 and 1981, ALPA filed grievances on behalf of two pilots, maintaining that Ozark had violated their collective bargaining agreement with ALPA by compensating the pilots for time lost due to injury as regular sick leave, rather than as occupational injury leave. The grievances were denied by Ozark's vice-president for operations, who maintained that Ozark had sole discretion under the agreement to determine when a pilot was due occupational injury leave. The basis for the denial is found in Section 15E of the agreement, which provides: "When the company determines that an employee has an occupational injury, such employee shall be eligible for occupational injury pay." Nowhere in the agreement is occupational injury defined, nor is there any standard for Ozark to follow in determining what is an occupational injury.
ALPA then followed the procedures of the agreement and appealed the grievances to the systems board of adjustment, as provided for in Sections 26B and 27. The systems board consists of. two members representing Ozark and two from ALPA, with provisions for adding a fifth neutral member if the board becomes deadlocked on any dispute pending before it.
The merits of the grievances were never presented to the board, since they deadlocked on the issue of whether the board had jurisdiction to hear the merits of the *489 occupational injury claims. Ozark contends that the board had no jurisdiction because the unambiguous language of Section 15E"When the company determines * * *"is not open for interpretation, and that a decision by the board on this matter would exceed its jurisdiction under Section 28E of the agreement. The language cited by Ozark in that section states: "The jurisdiction of the board shall not extend to proposed changes in hours of employment, rates of compensation or working conditions covered by existing agreements between the parties hereto." In essence, Ozark argues that allowing the board to hear the claims on the merits will effectively change Section 15E to read, "When the systems board determines * * *," and such a change would exceed its jurisdiction.
ALPA contends that other language in Section 28E gives the board jurisdiction to interpret and apply any terms of the agreement. That language provides: "The Board shall have jurisdiction over disputes between any employee covered by the Pilots' Agreement and the Company growing out of grievances or out of interpretation or application of any of the terms of the Pilots' agreement." ALPA argues that they seek an interpretation of what is an "occupational injury" instead of seeking a change in the contractual language.
ALPA, applying the grievance provisions, sought a neutral referee from the National Mediation Board to sit on the board and resolve the deadlocked dispute. The referee decided in favor of ALPA, finding that the systems board had jurisdiction over the merits of the grievances, and that the five-man board (which includes the referee) also had jurisdiction to decide the dispute on its merits. Ozark objected to this last action, maintaining that the neutral referee had accomplished his purpose, and that the merits of the claims should be remanded back to the four-man board (without the referee). Nevertheless, the neutral referee held that remanding the grievances back to the four-man board would serve no legitimate purpose except to further delay their final resolution. The grievances were presented on the merits and an award was given in favor of the two pilots. Ozark seeks the vacation of both awards by the board and ALPA seeks to enforce those awards.
Both parties have filed motions for summary judgment. The law is well established that for this Court to grant summary judgment, there must be no genuine issue of any material fact, and that the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Summary judgment is appropriate for this action, as only legal issues, and no factual questions, are before this Court for decision.
A court may overturn the decision of an airline systems adjustment board only on the basis of one of the grounds listed in 45 U.S.C. § 153 (First q). See Singer v. Flying Tiger Line, Inc., 652 F.2d 1349, 1355-56 (9th Cir.1981); Northwest Airlines, Inc. v. Air Line Pilots Association, International, 530 F.2d 1048, 1050 & n. 9 (D.C.Cir.), cert. denied, 426 U.S. 942, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976); Hunt v. Northwest Airlines, 600 F.2d 176, 178 (8th Cir.1979). 45 U.S.C. § 153 (First q) provides that an arbitral award may be vacated for failure "to conform, or confine itself, to matters within the scope of the divisions' jurisdiction, or for fraud or corruption by a member * * *." It has been held that the substantive grounds for vacating labor awards that do exist are extremely narrow. Loveless v. Eastern Air Lines, Inc., 681 F.2d 1272, 1276 (11th Cir.1982). Loveless involved an airline arbitration panel's award denying supplemental retirement benefits to former employees. The court there discovered three interrelated grounds, as exposited by the courts, for substantive review of arbitral awards. The three grounds and authority for each listed by the court were:
"(1) Whether the award is irrational, see, e.g., Gunther v. San Diego & Arizona E. Ry., 382 U.S. 257, 261 [86 S.Ct. 368, 370, 15 L.Ed.2d 308] * * * (1965) (`wholly baseless and completely without reason'); Safeway Stores v. American *490 Bakery Workers, Local 111, 390 F.2d [79] at 82 [5th Cir.1968] (`if * * * no judge, or group of judges could ever conceivably have made such a ruling'); S.Rep. No. 1201, supra at 3, reprinted in 1966 U.S.Code Cong. & Ad.News, at 2287 (`actually and indisputably without foundation in reason or fact');
"(2) Whether the award draws its essence from the letter or purpose of the collective bargaining agreement, United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. [593] at 597 [80 S.Ct. 1358 at 1361, 4 L.Ed.2d 1424]; see Brotherhood of Railroad Trainmen v. Central of Georgia Ry. * * *, 415 F.2d [403] at 412 [5th Cir.1969] (arbitrator's award `must have a basis that is at least rationally inferable, if not obviously drawn, from the letter of purpose of the collective bargaining agreement'), and
"(3) Whether the arbitrator conformed to a specific contractual limitation upon his authority, see e.g. Magnovox Co. v. International Union of Electrical Workers, 410 F.2d 388, 389 (6th Cir. 1969); Torrington Co. v. Metal Products Workers Union Local 1645, 362 F.2d 677, 680 (2nd Cir.1966); Textile Workers Union v. American Thread Co., 291 F.2d 894, 899-900 (4th Cir.1961)."
Two questions resulting from the referee's award are before this Court to be decided within the parameters of review set out above. First, was the referee's decision that the board had jurisdiction over the occupational injury claim irrational and in violation of the language of the collective bargaining agreement? Second, did the neutral referee exceed the board's jurisdiction by entertaining the grievances on the merits rather than remand the merits to the board sitting without him? These issues will be discussed separately below.
Section 204 of the Railway Labor Act, 45 U.S.C. § 184, mandates that carriers and organizations establish boards of adjustment to resolve all disputes concerning rates of pay, rules or working conditions. As the referee noted, the Act imposes a duty upon both carriers and organizations to create a machinery in their collective bargaining agreements for the arbitration of such minor disputes. I.A.M. v. Central Airlines, Inc., supra 372 U.S. at 686, 83 S.Ct. at 959. Section 28 of the collective bargaining agreement is the culmination of this duty imposed on Ozark and ALPA. That section gives jurisdiction to the board "over disputes * * * growing out of grievances or out of interpretation or application of any of the terms of the Pilots' Agreement." The agreement is silent as to any standards by which Ozark is to determine whether an occupational injury has occurred. It is not irrational for the referee to decide that the board's help is needed to resolve the ambiguity of what exactly an "occupational injury" is under the agreement. As such, the referee's decision can be said to be rationally drawn from the essence of the collective bargaining agreement. Therefore, under the standards of review set out above, this Court concludes that the referee's award of jurisdiction to the board should be upheld.
The second question, that of whether the referee should have remanded the merits of the grievances back to the four-man board, also involves an interpretation of the agreement. Section 28M provides in part:
"In any case where the said System Board of Adjustment becomes deadlocked and unable to reach a decision upon a method for breaking the deadlock or unable to mutually agree upon the appointment of a referee within the above prescribed thirty (30) days, either the company or association may within thirty (30) days thereafter petition the National Mediation Board for the appointment of a neutral referee to sit with the System Board of Adjustment as a member thereof."
ALPA requested a referee from the National Mediation Board to resolve the deadlock. In its request, the attorney for ALPA wrote:
"The Association moved to hear the cases on the merits and the Company moved to dismiss the cases. As a result, *491 the System Board has deadlocked on the motions. Therefore, pursuant to Paragraph M of the Ozark Air Lines Pilots' System Board of Adjustment Agreement, the Association hereby petitions the National Mediation Board for appointment of a neutral referee to hear the cases. A single neutral referee is requested to hear both cases together since both involve the same jurisdictional issue and have been heard together by the System Board of Adjustment." (ALPA's letter to the National Mediation Board, dated August 4, 1981.)
It is clear that ALPA petitioned for a referee to hear the "cases" and not just the one jurisdictional issue. Ozark argues that a remand is required because the dispute before the board was only the jurisdictional issue and no waiver of a hearing before the four-man board was mutually agreed upon by the parties. The agreement, however, contains no explicit mandate for a remand in this situation, and the restrictive interpretation advanced by Ozark can only be viewed as a tactic for delay in a situation calling for a speedy resolution.
Section 28M, the last sentence, commands that the board of adjustment, as then constituted (with referee), "shall hear the parties with reference to the dispute pending before it * * *." The dispute before it concerned whether the pilots were entitled to occupational injury pay. As the referee noted in the board's award of jurisdiction, "Implicit in the Carrier's position on this issue is that the language of Section 15E so clearly reserves to the Carrier the right to determine whether an employee has an occupation injury that it is not arguably subject to challenge. In essence, it is an argument as to the merits of the case."
This Court agrees with this reasoning by the referee. The referee held that because the four-man board is partisan in nature, there is little likelihood anything but a deadlock will result from further consideration of these grievances by the four-man board. Finding that the purpose of Section 28 is to provide a machinery for the speedy resolution of minor disputes, the referee decided to also hear the case on the merits. This Court finds that the referee was well within the jurisdiction given to the board in also deciding the merits of the grievances.
Finally, this Court recognizes that the referee's decisions here may not have been the same as a judge using ordinary principles of contract construction. The narrow standard of review of arbitral awards elicited above, however, renders that fact totally irrelevant. Loveless v. Eastern Air Lines, supra, at 1280; Safeway Stores v. American Bakery Workers, Local 111, 390 F.2d at 83-84. What is relevant is that the systems board reached a result that, in this Court's view, comported with the essence of the collective bargaining agreement. Accordingly, it is the duty of this Court to affirm the award of the board and render an order directing its enforcement.
For the reasons stated above, the motion of the defendant, Air Lines Pilots' Association, International, for summary judgment is sustained. The motion of plaintiff, Ozark Air Lines, for summary judgment is denied. Ozark is hereby ordered to comply with the grievance awards entered by its systems board of adjustment in Grievance Nos. STL-78-7-1 (L. Behnken) and STL-81-4-1 (T. Gerber).
In accordance with this memorandum opinion, it is hereby ordered and adjudged that the motion of defendant, Air Lines Pilots' Association, International, for summary judgment be and it is hereby sustained, and the clerk of the Court will prepare and enter the proper order to that effect.