884 F.2d 1389
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re NATIONAL RISK UNDERWRITERS, INC., Petitioner,
 No. 88-2564.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1989.
Decided Aug. 22, 1989.
Rehearing and Rehearing In Banc Denied Sept. 11, 1989.
 
 Edward A. Dudek (Dennis M. Grzezinski, John G. Gehringer, Michael J. Klinker, Frisch, Dudek And Slattery, Ltd., Andrew J. Ellis, Jr., Mays & Valentine, on brief) for petitioner.
 Peter Michael Foley (Stephanie L. Hutchins, Leboeuf, Lamb, Leiby & Macrae, on brief) for respondent.
 Before DONALD RUSSELL and WILKINS, Circuit Judges, and RICHARD B. KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Petitioner National Risk Underwriters, Inc. has requested a writ of supervisory mandamus to prevent the district court from allowing the Appellee herein, Occidental Fire & Casualty Company of North Carolina, to depose an arbitrator who sat on a panel that arbitrated a dispute between the parties. Because we conclude that to allow such a deposition would impermissibly interfere with the arbitral decision-making process, we grant the writ of mandamus.
 
 I.
 
 2
 On December 24, 1980, National Risk Underwriters, Inc. ("NRU") and Occidental Fire & Casualty Company of North Carolina ("Occidental") entered into an agreement ("the Agreement") wherein Occidental appointed NRU as its agent for the purposes of procuring, underwriting, and servicing captive insurance programs on Occidental's behalf. Occidental terminated the Agreement as of March 10, 1985, claiming that NRU's failure to perform pursuant to the Agreement resulted in losses to Occidental which exceeded $23 million dollars. On June 24, 1986, NRU filed a claim with Occidental for profit sharing pursuant to the Agreement as well as a claim for punitive damages. NRU also demanded binding arbitration of these claims pursuant to the Agreement and the Uniform Arbitration Act as adopted in North Carolina, N.C.Gen.Stat. 1-567.1-.14. Occidental, in turn, requested arbitration of its allegations of NRU's failure to perform certain aspects of the Agreement.
 
 
 3
 Although the Agreement provided that disputes were to be resolved by an arbitrator, NRU and Occidental were unable to agree on a single arbitrator. Consequently, the parties agreed to modify the arbitration provision in the Agreement so that a panel of three arbitrators could be selected. Occidental chose Bernard Buge, NRU chose William D. McGinn, and the two parties chose Otis Aldrich.
 
 
 4
 The parties' prehearing discovery began in spring, 1987. The arbitration hearing was held in New York City in November and December 1987 and January 1988, and lasted over twenty-one days. The three arbitrators heard testimony from twenty-one witnesses, and the hearings generated over 3,500 pages of transcript. Later that spring, the arbitrators reconvened in Philadelphia to decide the issue. On April 6, 1988, by majority vote, Arbitrators Aldrich and McGinn awarded NRU $343,995 on its profit-sharing claim, $347,502 in "run-off" compensation, and $500,000 in punitive damages. Arbitrators Aldrich and McGinn reduced Occidental's $23 million dollar claim to $600,000 as damages related to six of its ten claims.[1] Arbitrator Buge issued a minority report and subsequently submitted an affidavit (the "Affidavit") protesting the methods by which the decision was reached.[2]
 
 
 5
 Pursuant to N.C.Gen.Stat. 1-567.10, Occidental petitioned the arbitrators to change their award to correct what it believed to be a mathematical error in the majority's calculation of profit-sharing due NRU. Occidental argued that pursuant to the terms of the Agreement, both Occidental and NRU apparently had subtracted previous profit-share payments to NRU in calculating the amount due NRU. NRU filed its objections for the application for a change of award pursuant to N.C.Gen.Stat. 1-567.10 and 1-567.14. Occidental replied. On April 22, 1988, Arbitrators Aldrich and McGinn declined to change the award.
 
 
 6
 NRU petitioned the District Court for the Eastern District of North Carolina to confirm the part of the arbitration award decided in its favor and enter judgment against Occidental. In its petition, NRU invoked Section 9 of the Federal Arbitration Act, 9 U.S.C. Sec. 9, for the first time. In reply, Occidental opposed NRU's petition and moved to vacate or modify the award pursuant to N.C.Gen.Stat. Sec. 1-567.13, alleging misconduct on the part of arbitrators McGinn and Aldrich. Occidental relied on Buge's Affidavit to support its allegations of misconduct. Occidental sought to depose Arbitrator Aldrich on the grounds that Aldrich and McGinn had engaged in specific acts of misconduct, namely: (1) disregarding the law in holding that Occidental's alleged contributory negligence was a defense to NRU's breach of fiduciary duty; (2) disregarding the Agreement because they failed to subtract profit-sharing payments previously made to NRU when they calculated the amount of profit-share payments owed NRU; and (3) acting in a way prejudicial to Occidental in meeting to consider the issues presented to the panel without telling Buge of the meeting.
 
 
 7
 Occidental issued a subpoena duces tecum commanding Aldrich to appear for his deposition on July 1, 1988. NRU moved to quash the subpoena or in the alternative for a protective order prohibiting or supervising the deposition. Occidental responded to NRU's motion to quash and presented the Buge Affidavit that supported Occidental's allegations of misconduct by Aldrich and McGinn. In an Order dated June 29, 1988, the district court held that on the basis of the briefs of the parties and the Affidavit, "an objective basis exists for a reasonable belief that some misconduct on the part of the arbitrators has occurred and that the respondent may depose arbitrator Aldrich relative to that misconduct." The district court denied NRU's motion to quash the subpoena and allowed Aldrich's deposition to proceed. The next day, the district court granted NRU's motion to stay Aldrich's deposition pending this court's decision on NRU's petition for a writ of supervisory mandamus. Consequently, NRU petitioned this court under the All Writs Act, 28 U.S.C. Sec. 1651, to order the district court to overturn its order denying NRU's motion to quash the subpoena for the deposition of Otis Aldrich. For the reasons discussed below, we grant NRU's petition for a writ of mandamus, and we remand the case to the district court.
 
 II.
 
 8
 The question before this court is whether a district court can order a deposition of an arbitrator pursuant to the request of the losing party involved in the arbitration absent an objective showing of fraud, misconduct, or bias.
 
 
 9
 Occidental urges this court to permit it to depose Arbitrator Aldrich. Occidental alleges that:
 
 
 10
 (1) McGinn and Aldrich disregarded the Agreement in arriving at their profit-sharing award (in disregarding the provision that prior profit-sharing payments were to be taken into account); (2) McGinn and Aldrich then changed the rationale of the award after Occidental pointed out the error; (3) McGinn and Aldrich, after concluding that NRU breached its fiduciary duty to Occidental, manifestly disregarded Occidental's losses of over $23 million and established their award of $600,000 out of thin air; and (4) McGinn and Aldrich violated legal and common sense precepts by conducting their deliberations outside the presence of Mr. Buge. (Occidental's Brief at 13-14)
 
 
 11
 Occidental's argument is summed up as follows:
 
 
 12
 The deposition of Mr. Aldrich is necessary in order to fully examine what occurred the evening between the first and second full day of deliberations. It is undisputed that Aldrich and McGinn discussed substantive aspects of the parties' claims on at least two occasions during that brief period. What else occurred, outside the presence of Mr. Buge, to cause Messrs. Aldrich and McGinn to agree on a $600,000 award to Occidental? What caused Mr. Aldrich to reverse himself between the first and second full day of deliberations and to award profit-sharing to NRU? These questions cannot be answered without the sworn testimony of Mr. Aldrich. (Occidental's Brief at 14)
 
 
 13
 As much as Occidental believes that the deposition of Aldrich is the only way to determine why he changed his mind (an occurrence, we would note, that would be wholly within the bounds of any decision-making process) we are unable to permit it to proceed with the deposition.
 
 
 14
 We begin our analysis of this case by noting that there exists a strong federal policy favoring arbitrability. Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Concomitant with this federal policy favoring arbitration is the belief that the arbitration process, as the forum selected by the parties for the resolution of their dispute, must operate with a minimum of judicial supervision. The arbitration process represents a faster and less expensive alternative to litigating disputes in court. As a result, the arbitration process must not become but the first step in the litigation process; to do so would be to defeat the very purposes for which the parties chose arbitration as a method of dispute resolution.
 
 
 15
 The Agreement provided that NRU and Occidental would be governed by the laws of North Carolina. The Supreme Court of North Carolina has held "that where an objective basis exists for a reasonable belief that misconduct has occurred, the parties to the arbitration may depose the arbitrators relative to that misconduct; and such depositions are admissible in a proceeding under G.S. 1-567.13 to vacate an award." Carolina-Virginia Fashion Exhibitors, Inc. v. Gunter, 291 N.C. 208, 230 S.E.2d 380, 388 (1976). In Fashion Exhibitors, the supreme court held that ex parte acts of the arbitrators, such as consulting with an outside attorney before making their award, visiting the premises at issue without the consent of the parties, and basing their award on the information obtained during those visits, constituted sufficient misconduct to compel the court to vacate the arbitration award. 230 S.E.2d at 387, 389. On remand, the state court of appeals noted that "judicial review of an arbitration award is confined to determination of whether there exists one of the specific grounds for vacation of an award under the [Uniform] Arbitration [Act]."[3] Carolina-Virginia Fashion Exhibitors, Inc. v. Gunter, 41 N.C.App. 407, 255 S.E.2d 414, 418 (N.C.Ct.App.1979). It is clear that only when a non-prevailing party makes a clear showing of the arbitrator's fraud, misconduct, or bias could the district court properly grant that party's request to depose an arbitrator. Similarly, only if the reviewing court finds that the record objectively discloses that the arbitrators exceeded their authority in some way may the court vacate the award. See, e.g., G.L. Wilson Bldg. Co. v. Thorneburg Hosiery Co., Inc., 85 N.C.App. 684, 355 S.E.2d 815, 818 (N.C.Ct.App.), review denied, 320 N.C. 798, 361 S.E.2d 75 (1987). In general, "[c]ourts have repeatedly condemned efforts to depose members of an arbitration panel to impeach or clarify their awards." Legion Ins. Co. v. Insurance General Agency, Inc., 822 F.2d 541, 543 (5th Cir.1987), citing Andros Compania Maritime v. Marc Rich & Co., 579 F.2d 691, 702 (2d Cir.1978); see also O.R. Securities v. Professional Planning Ass'n., 857 F.2d 742, 748 (11th Cir.1988); Hunt v. Mobil Oil Corp., 654 F.Supp. 1487, 1495-96 (S.D.N.Y.1987).
 
 
 16
 We have no difficulty concluding that the allegations contained in the Affidavit do not rise to the level of misconduct which would require the deposition of Arbitrator Aldrich. The "misconduct" alleged amounts to nothing more than post-award complaints lodged by the losing party. There is no hint of ex parte communications, such as those in Fashion Exhibitors, that would cause this court to vacate the award. Nor are there any other grounds upon which vacation of the award could be based pursuant to our narrow scope of review as articulated in N.C.Gen.Stat. Sec. 1-567.13(a).[4] There is nothing in the present case that could be considered misconduct, and there is nothing in the record that could justify the deposition of Arbitrator Aldrich.
 
 
 17
 We believe that to permit this kind of searching inquiry into the arbitral decision-making process would work an erosion of the integrity of that process as well as inject an impermissible degree of judicial supervision into arbitration proceedings. Indeed, it would defeat the whole purpose of arbitration as a faster and cheaper forum for dispute resolution if the courts were forced to step in and order the depositions of arbitrators whenever a party is displeased with a decision.
 
 
 18
 Such a discovery process would negate the concept of arbitration as a relatively quick means of dispute resolution, and would only protract and delay the termination of the arbitration proceeding. Thus, the arbitration, instead of serving as an efficient and expeditious means of dispute resolution, an essential ingredient of the parties' agreement to forego the judicial process, would, if discovery and an evidentiary hearing were ordered, mean inordinate delay.
 
 
 19
 Hunt v. Mobil Oil Corp., 654 F.Supp. 1487, 1495-96 (S.D.N.Y.1987) (footnote omitted). In sum, the fact that one party is unhappy with the arbitration award simply cannot serve as a pretext for invalidation of the award. We hold that the district court erred in granting Occidental's request to proceed with the deposition of Arbitrator Aldrich.
 
 III.
 
 20
 For the reasons discussed above, we grant the appellant's petition for writ of mandamus and remand this case to the district court for further proceedings not inconsistent with this order.[5]
 
 
 
 [1]
 Based on these figures, we calculate the net award to NRU as $591,497. Occidental, in its brief, calculates the net award to NRU as $509,497. (Occidental's Brief at 4)
 
 
 [2]
 Occidental relies almost entirely on the Buge Affidavit in making its appeals to the courts. The Affidavit claimed:
 On the first day of deliberations, Aldrich suggested that the group agree to a "vow of silence" that would prevent the arbitrators from discussing the deliberations or decision with the parties. Buge refused on the grounds that he "wanted to be able to make the parties aware of any improprieties that might occur that might be prejudicial to their interests and also make them aware of the rationale for our decision." (Affidavit at 2)
 During the second day of deliberations, Buge and Aldrich agreed that during the last quarter of 1984, Occidental had not made a profit on the programs underwritten by NRU. Buge argued that NRU could not receive any punitive damages because no actual damages were due. On this day, the panel also recognized that NRU owed to Occidental a fiduciary duty.
 After the three arbitrators dined together, Buge returned to his home. Aldrich and McGinn, who were staying at the same hotel, apparently discussed the case over drinks.
 On the third day of deliberations, Aldrich told Buge that after Aldrich and McGinn discussed the case at their hotel, Aldrich experienced a "revelation" which was to award NRU $343,995 in profit sharing and $500,000 in punitive damages because of intentionally delayed payment of profit sharing. Aldrich also decided to award Occidental $600,000 compensation for its alleged loss of $23 million.
 Buge claimed that Aldrich and McGinn, who shared a taxi from the hotel to the meeting place, already had agreed to decide the arbitration in accordance with Aldrich's revelation by the time the three arbitrators met for their third day of deliberations.
 Buge claimed that there existed no rational basis for the figures. Although the arbitrators initially had agreed to use calculations prepared by Occidental's expert witness, Mr. D. Marbell, as evidence of NRU's profit sharing claim, Aldrich allegedly failed to subtract profits previously paid to NRU from the amount available for profit share allocation as set forth in Marbell's calculations. Thus, Buge claimed that Aldrich and McGinn's figure of $343,995 as profit sharing due NRU was incorrect.
 Buge also claimed that he did not know of any evidence of the $200,000 previously suppressed profit share payments to which Aldrich and McGinn referred in their letter to Occidental of April 21, 1988.
 Buge requested that the arbitration panel be reconvened so that profit share payments could be recalculated, but Aldrich refused. Subsequently, on April 26, 1988 Buge sent a letter to counsel for NRU and Occidental, with copies to Aldrich and McGinn, arguing that the award should be modified.
 On April 28, 1988, NRU's insurance carrier filed an application for clarification of the award. Buge claimed that while he agreed with Aldrich and McGinn that no clarification of the award was necessary, he nonetheless believed that the numbers were wrong.
 
 
 [3]
 N.C.G.S. Sec. 1.567.13(a) provides:
 Upon application of a party, the court shall vacate an award where:
 (1) The award was procured by corruption, fraud or other undue means;
 (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
 (3) The arbitrators exceeded their powers;
 (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of G.S. 1-567.6, as to prejudice substantially the rights of a party; or
 (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under G.S. 1-567.3 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.
 
 
 [4]
 We would note that our decision would be the same if we decided this case pursuant to the Federal Arbitration Act. See, e.g., O.R. Securities v. Professional Planning Ass'n., 857 F.2d 742, 747-48 (11th Cir.1988); Legion Ins. Co. v. Insurance General Agency, Inc., 822 F.2d 541, 543 (5th Cir.1987)
 
 
 [5]
 The motion of the appellee to file exhibits is granted