Richard HOEFT, III, individually and as trustee under the Hoeft Charitable Remainder Unitrust, Carol J. Hoeft, as trustee under the Hoeft Charitable Remainder Unitrust, Petitioners–Appellants,

v.

MVL GROUP, INC., Discovery Research Group of Utah, Inc., formerly known as Discovery Acquisition Corp., Respondents–Appellees.

Docket No. 02–9155.

United States Court of Appeals, Second Circuit.

Argued: March 27, 2003.

Decided: Sept. 3, 2003.

Louis B. Kimmelman (Marissa Molé, on the brief), O'Melveny & Myers LLP, New York, NY, for Petitioners–Appellants.

James T. Shearin, Pullman & Comley, LLC, Bridgeport, CT, for Respondents–Appellees.

Before: B.D. PARKER, Jr. and RAGGI, Circuit Judges, and GOLDBERG, Judge.*

B.D. PARKER, JR., Circuit Judge.

This is one of those rare cases in which a district court vacated an arbitration award because of the arbitrator's manifest disregard of the law. The arbitrator, Steven Sherrill, issued a $1,402,565 award in favor of petitioners Richard Hoeft, III and Carol J. Hoeft. The Hoefts filed a petition to confirm the award in the United States District Court for the Southern District of New York, and respondents MVL Group, Inc. and Discovery Research Group of Utah, Inc. (collectively, "MVL") moved to vacate the award. After limited discovery,

---

* The Honorable Richard W. Goldberg, of the United States Court of International Trade, sitting by designation.

including a court-supervised deposition of the arbitrator, the District Court (Kimba M. Wood, *Judge*) denied the Hoefts' petition to confirm the award and granted MVL's motion to vacate it, concluding that Sherrill had manifestly disregarded the law. Because we conclude that the District Court should not have permitted MVL to depose the arbitrator regarding his reasoning and decision-making processes, and because we believe that the arbitrator neither manifestly disregarded the law nor exceeded his powers, we reverse the judgment of the District Court.

## BACKGROUND

In the 1980s Richard Hoeft, III founded two companies that specialize in the field service area of the market research industry, Discovery Research Group, Inc. and Discovery Research Group of Utah, Inc. By February 2000, Hoeft individually and the Hoeft Charitable Remainder Unitrust, of which Hoeft and his wife Carol J. Hoeft were co-trustees, were the sole shareholders of both companies. In a February 2000 Stock Purchase Agreement and Amendment to Stock Purchase Agreement, the Hoefts sold their shares for $6.5 million to MVL Group, Inc. and Discovery Acquisition Corporation.[1]

The sale closed on February 29, 2000, but the parties agreed that MVL could defer paying a portion of the purchase price until the following year and that the Hoefts would receive a purchase price adjustment if the value of the companies increased. The adjustment would be based on a calculation of EBITDA, which was defined in the Amendment as follows:

> For purposes of this Amendment, the term EBITDA shall mean income from operations before interest expense, provisions for income taxes, interest and other investment income, other income, depreciation and amortization, which shall be determined in accordance with generally accepted accounting principles consistently applied . . . .

(Amendment to Stock Purchase Agreement § 1(b).) The Hoefts would receive the adjustment if, and only if, EBITDA for the year following the closing (the "Secondary Year") was equal to or greater than EBITDA for the year preceding the closing (the "Primary Year"). If Secondary Year EBITDA was equal to or greater than Primary Year EBITDA, the purchase price would be increased by the difference between 5.5 times Primary Year EBITDA, on the one hand, and $6,500,000, on the other.

The Amendment provided that, in the event of a dispute as to the calculation of either Primary or Secondary Year EBITDA, the parties were to

> use their reasonable best efforts to resolve such dispute, and in the event that they are unable to do so such dispute shall be resolved by Steven Sherrill, whose decision in such matters shall be binding and conclusive upon each of the parties hereto and shall not be subject to any type of review or appeal whatsoever.

(Amendment to Stock Purchase Agreement § 1(d).) Sherrill is a certified public accountant who represented the Hoefts in this transaction and had also worked as a consultant to MVL. The parties ultimately disagreed over the calculation of Primary Year EBITDA. The disagreement involved the proper treatment of certain one-time payments to employees—sale-related bonuses and stock option extinguish-

---

1. Following the sale, Discovery Research Group, Inc. and Discovery Research Group of Utah, Inc. were merged into Discovery Acqui- sition Corporation, which changed its name to Discovery Research Group of Utah, Inc.

ment costs—made in connection with the February stock sale. MVL believed that these one-time payments should reduce "income from operations," a component of EBITDA under § 1(b) of the Amendment, while the Hoefts believed that they should not. The parties were unable to resolve the dispute themselves, and the Hoefts' attorney wrote to Sherrill requesting that he resolve it.

A general arbitration clause in the Stock Purchase Agreement (from which the more specific § 1(d) of the Amendment represented a carve-out) referred most disputes arising under the Agreement to the American Arbitration Association (the "AAA"). Invoking this clause, MVL initiated a proceeding with the AAA seeking to disqualify Sherrill and to have the AAA appoint a new arbitrator. MVL argued, on the basis of a draft calculation of Primary Year EBITDA that Sherrill had circulated in November 2000, that he had prejudged the matter and could not act impartially.[2] The AAA denied MVL's motions as premature, noting that, if MVL felt that Sherrill conducted the arbitration proceeding with "evident partiality," it could seek to have the award vacated on that ground after the proceeding was concluded and Sherrill rendered his award. See 9 U.S.C. § 10(a)(2).

Sherrill proceeded to arbitrate the dispute over Primary Year EBITDA. The parties submitted documentary evidence and expert reports supporting their conflicting calculations. In July 2001, Sherrill issued a draft award and circulated it to the parties. After receiving comments and additional evidence from the parties, Sherrill issued his final award in August 2001. Relying on his perception of the parties' intent, Sherrill adopted the Hoefts' contention that the one-time payments did not reduce Primary Year income from operations (nor, therefore, Primary Year EBITDA). Sherrill rejected MVL's argument that income from operations could be determined solely according to Generally Accepted Accounting Principles ("GAAP"), as GAAP defined neither "income from operations" nor "EBITDA." Pursuant to the formula prescribed in § 1(e) of the Amendment, Sherrill determined that, if Secondary Year EBITDA was equal to or greater than his calculation of Primary Year EBITDA, MVL owed the Hoefts $1,402,565. MVL conceded that Secondary Year EBITDA was equal to or greater than Primary Year EBITDA.

In September 2001, the Hoefts filed a petition in the District Court to confirm the award pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (1999) (the "FAA"). MVL, in turn, filed a demand with the AAA to vacate the award, as well as a slew of motions in the District Court. These motions sought to: vacate the arbitration award; stay the District Court action pending the outcome of the AAA proceeding; stay the District Court's consideration of the Hoefts' petition pending discovery; and compel arbitration. The Hoefts cross-moved to stay the AAA proceeding. In a November 2001 order the District Court denied MVL's motion for a stay pending the outcome of the AAA proceeding, denied MVL's motion to compel arbitration, granted the Hoefts' motion to stay the AAA proceeding, and denied MVL's motion to stay consideration of the Hoefts' petition pending discovery.

---

**2.** The Amendment required MVL to calculate Primary Year EBITDA by June 30, 2000. After MVL failed to do so, the Hoefts requested that Sherrill perform the calculation. (The parties dispute whether a representative of MVL also asked Sherrill to calculate Primary Year EBITDA.) No one objected to this request, and Sherrill forwarded his draft calculation to the parties in November 2000.

Following the District Court's resolution of these motions, MVL sought a broad range of discovery: interrogatories, document production, and depositions, including the deposition of the arbitrator. At the time, MVL had asserted four grounds for vacating the arbitration award: (1) that Sherrill had exceeded his powers, (2) that the arbitrator had manifestly disregarded the law by failing to apply GAAP, (3) that the dispute resolution mechanism of § 1(d) of the Amendment had not been properly triggered, and (4) that the arbitrator had prejudged the dispute. The Hoefts argued that the District Court should not permit any discovery but that, to the extent any discovery would be permitted, the only useful testimony would be the arbitrator's. The District Court ordered that MVL could depose the arbitrator for one-half hour, under the court's supervision.

On the day of the arbitrator's deposition, the parties disputed its proper scope. MVL's counsel indicated that he intended to question the arbitrator regarding whether he had manifestly disregarded the law, while the Hoefts' counsel argued that the deposition should be limited to whether the arbitrator had prejudged the dispute (*i.e.,* to events that occurred before the Amendment's dispute resolution mechanism had been triggered). The court declined to limit the scope of the deposition, expressly permitting MVL's counsel to examine the arbitrator regarding his alleged manifest disregard of the law.

The in-court deposition of the arbitrator proceeded, with the court supervising. MVL's counsel did not question the arbitrator regarding the allegations of bias or prejudgment. Instead, MVL's counsel questioned the arbitrator regarding his understanding of the calculation of EBITDA under the Amendment and the substance of his decision-making process in calculating Primary Year EBITDA, including the

role of GAAP in his calculation. Sherrill testified that he had "disregard[ed] the phrase 'generally accepted accounting principles'" in calculating Primary Year EBITDA and that "the preponderance of evidence suggested that had GAAP been applied, in my determination those two expense items [*i.e.,* the sale-related bonuses and stock option extinguishment costs] would have reduced EBITDA under this calculation." In response to questioning by the Hoefts' counsel, Sherrill testified that in his opinion GAAP provided more than one way to present categories of expenses and was therefore not determinative of EBITDA.

At the close of the deposition, MVL's counsel indicated that he would no longer seek additional discovery. Several days later, MVL's counsel confirmed that "MVL will not be pursuing its arguments of arbitral bias due to prejudgment and that the 'dispute' prerequisite was unmet." (Letter from Shearin to Kimmelman of 1/28/0[2], at 1.)

After receiving additional briefing regarding the substantive accounting issues underlying the arbitration award, the District Court denied the Hoefts' petition to confirm the award and granted MVL's motion to vacate it. The District Court concluded that the arbitrator had not exceeded his powers under 9 U.S.C. § 10(a)(4), but that he had manifestly disregarded the law in failing to calculate Primary Year EBITDA in accordance with GAAP. Following the entry of judgment, the Hoefts appealed.

## DISCUSSION

On appeal, the Hoefts have launched a three-pronged attack on the decision of the District Court. First, they argue that because the Amendment insulated the arbitration award from judicial review, the District Court erred in even considering

whether the arbitrator had manifestly disregarded the law. Second, and in the alternative, they argue that the District Court abused its discretion in permitting the arbitrator to be deposed concerning his decision-making process. Third, they argue that the arbitrator neither manifestly disregarded the law nor exceeded his powers.

## I. Enforceability of Private Agreements to Preclude Judicial Review of Arbitration Awards

█ Under § 1(d) of the Amendment, disputes over the calculation of EBITDA were to be "resolved by Steven Sherrill, whose decision in such matters shall be binding and conclusive upon each of the parties hereto and shall not be subject to any type of review or appeal whatsoever." According to the Hoefts, this provision deprived the District Court of the authority to examine the substance of the arbitrator's decision and, thus, to review it for manifest disregard of the law. While the Hoefts did invoke the District Court's jurisdiction in order to obtain a judgment confirming the arbitration award, they contend that there is no contradiction between their petition and their claim that the substance of the arbitrator's decision is unreviewable. The Hoefts rely on the Stock Purchase Agreement and its Amendment as the source of their right to seek confirmation of the award in federal court.

The District Court did not determine whether a private agreement could both authorize a federal court to enter a judgment confirming an arbitral award and divest that court of the authority to review the substance of the award for manifest disregard of the law. Instead, the District Court assumed *arguendo* that parties could agree to eliminate judicial review of an arbitration award, but concluded that

§ 1(d) of the Amendment was not sufficiently clear to indicate the parties' intention to do so.

In urging us to enforce the parties' apparent agreement to insulate the substance of the arbitration award from judicial review, the Hoefts rely on the general principle of freedom of contract and the more specific canon of deference to private agreements to arbitrate. But the freedom to contract, like any freedom, has its limits, and the Hoefts' reliance on the federal policy favoring arbitration overlooks several key assumptions that undergird that policy. It is in part because arbitration awards are subject to minimal judicial review that federal courts voice such strong support for the arbitral process. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 n. 4, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ("We have stated ... that 'although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute' at issue." (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 232, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987))). Arbitration awards are not self-enforcing, a fact that the Hoefts, who petitioned the District Court to confirm the award, cannot deny. Thus, while we have spoken in broad terms of deference to private agreements to arbitrate, we have always done so with an awareness of the confirmation-and-vacatur safety net that hangs below. The FAA prescribes several grounds for vacating arbitration awards that although narrow are nevertheless important. Specifically, § 10(a) of the FAA authorizes a district court to vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Supreme Court has supplemented the FAA with an additional ground not prescribed in the statute: manifest disregard of the law. *See Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953), *overruled on other grounds, Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 485, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *see also, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986). The manifest disregard standard together with § 10(a) represent a floor for judicial review of arbitration awards below which parties cannot require courts to go, no matter how clear the parties' intentions.

While various courts have enforced private agreements to alter the judicial review to be applied to arbitral awards, as the Hoefts acknowledge, "[m]ost of these cases have involved attempts to *raise* the level of judicial review otherwise available under the FAA." (Br. of Petitioners–Appellants at 26 n. 16 (emphasis added).) *See, e.g., Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 293 (3d Cir.2001); *LaPine Tech. Corp. v. Kyocera Corp.*, 130 F.3d 884, 888–89 (9th Cir.1997); *Gateway Techs., Inc. v. MCI Telecomm. Corp.*, 64 F.3d 993, 996–97 (5th Cir.1995). Decisions enforcing agreements to decrease the otherwise applicable level of judicial review are far more scarce. *See Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 931 (10th Cir. 2001) (noting in dicta that "parties to an arbitration agreement may eliminate judicial review by contract"); *Aerojet–Gen. Corp. v. Am. Arbitration Ass'n*, 478 F.2d 248, 251 (9th Cir.1973) (same). While taking no position on the enforceability of agreements to raise the level of judicial review, we note that there is a fundamental difference between an agreement to increase the scrutiny that courts apply when considering whether to confirm or vacate an arbitration award and an agreement to prevent courts from reviewing the substance of an arbitration award at all.

An agreement that contemplates confirmation but bars all judicial review presents serious concerns. Arbitration agreements are private contracts, but at the end of the process the successful party may obtain a judgment affording resort to the potent public legal remedies available to judgment creditors. In enacting § 10(a), Congress impressed limited, but critical, safeguards onto this process, ones that respected the importance and flexibility of private dispute resolution mechanisms, but at the same time barred federal courts from confirming awards tainted by partiality, a lack of elementary procedural fairness, corruption, or similar misconduct. This balance would be eviscerated, and the integrity of the arbitration process could be compromised, if parties could require that awards, flawed for any of these reasons, must nevertheless be blessed by federal courts. Since federal courts are not rubber stamps, parties may not, by private agreement, relieve them of their obligation to review arbitration awards for compliance with § 10(a). *Cf. I/S Stavborg v. Nat'l Metal Converters, Inc.*, 500 F.2d 424,

427 (2d Cir.1974) (holding that parties' invocation of district court's power to appoint arbitrator demonstrated their intent to permit court to review arbitral award).

The Hoefts contend there is a middle ground. They would draw a distinction between the bases for vacatur enumerated in § 10(a), on the one hand, and the judicially created manifest disregard of the law standard, on the other. Thus, the argument goes, we may preclude parties from contracting around § 10(a), yet permit them to contract around the manifest disregard standard. Accordingly, the Hoefts urge us to interpret § 1(d) of the Amendment as divesting the District Court of the authority to review the arbitration award for manifest disregard of the law, even if it does not divest the court of the authority to review it for corruption, partiality, or the other § 10(a) grounds.

■ But we see no reason to treat manifest disregard of the law differently from the grounds enumerated in § 10(a). Through the combination of legislation and common law, narrow standards of reviewing arbitration awards have developed in the courts of this and other Circuits. *See, e.g., Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 26–27 (2d Cir.2000), *cert. denied*, 531 U.S. 1075, 121 S.Ct. 770, 148 L.Ed.2d 669 (2001); *see also, e.g., G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1106 (9th Cir.2003); *Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 394–96 (5th Cir.2003); *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001); *O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 746–47 (11th Cir.1988). As the Tenth Circuit held in refusing to enforce a private agreement to expand judicial review of arbitration awards, "in the absence of clear authority to the contrary, parties may not interfere with the judicial process by dictating how the federal courts operate." *Bowen*, 254

F.3d at 936 n. 8. Similarly, in a different context the Supreme Court has held that "the mere fact that [a] settlement agreement provides for vacatur" of a judgment does not justify vacatur, *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), stating that judicial precedents "are not merely the property of private litigants," *id.* at 26, 115 S.Ct. 386 (citation and quotation marks omitted). The fact that the manifest disregard standard is a product of common law, rather than statute, makes it no less essential to the judicial review of arbitration awards. Just as the Supreme Court held in *Bonner Mall* that private parties may not dictate to a federal court when to vacate another court's judgment, we hold today that private parties may not dictate to a federal court when to enter a judgment enforcing an arbitration award. Judicial standards of review, like judicial precedents, are not the property of private litigants.

Lastly, we note that *Katz v. Feinberg*, 290 F.3d 95 (2d Cir.2002), upon which the Hoefts place considerable reliance, does not alter this analysis. In that case, we enforced the parties' agreement to preclude *arbitral* review of an arbitration award, holding that a panel had exceeded its authority in modifying the award that another arbitrator had rendered. *Id.* at 98. *Katz* obviously did not hold that parties may preclude *judicial* review of arbitration awards, as that decision itself affirmed a district court judgment vacating a portion of an arbitration award. There is no contradiction in our differing treatment of private agreements to preclude arbitral and judicial review of arbitration awards. As the district court noted in *Katz*, "Because arbitration is a creature of contract, the arbitrability of an issue derives fundamentally from the parties' agreement to arbitrate." *Katz v. Feinberg*, 167

F.Supp.2d 556, 565–66 (S.D.N.Y.2001), *aff'd*, 290 F.3d 95 (2d Cir.2002). Thus, just as a private agreement may vest decision-making authority in an arbitrator, so may it deprive an arbitrator of that authority. Unlike arbitration, however, judicial review is not a creature of contract, and the authority of a federal court to review an arbitration award—or any other matter—does not derive from a private agreement. *See, e.g., Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (holding that "no action of the parties can confer subject-matter jurisdiction upon a federal court").

▮ Parties seeking to enforce arbitration awards through federal-court confirmation judgments may not divest the courts of their statutory and common-law authority to review both the substance of the awards and the arbitral process for compliance with § 10(a) and the manifest disregard standard. Therefore, we must examine the merits of the District Court's conclusion that the arbitrator manifestly disregarded the law in rendering his award.

## II. Deposition of Arbitrator

▮ Before reaching the ultimate question of the correctness of the District Court's vacatur of the arbitration award, we must consider whether the court erred in permitting MVL to depose the arbitrator regarding his decision-making process and in relying on his testimony in deciding to vacate the award. The District Court's decisions to permit the deposition of the arbitrator generally, and to permit questioning regarding his manifest disregard of the law in particular, are reviewed for abuse of discretion. *See, e.g., Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir.1994); *Lyeth v. Chrysler Corp.*, 929 F.2d 891, 898 (2d Cir.1991) ("The district court has dis-

cretion to deny discovery in a proceeding to confirm an arbitral award."). A district court abuses its discretion when "(1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir.2001).

▮ We begin our analysis with the well-established rule that arbitrators may not be deposed absent "clear evidence of impropriety." *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 702 (2d Cir.1978); *see also Lyeth*, 929 F.2d at 899. The "impropriety" relied on by MVL to support its application to depose Sherrill was the arbitrator's alleged prejudgment of the parties' dispute evidenced by his draft EBITDA calculation in November 2000.

The Hoefts appear to have conceded the permissibility of deposing the arbitrator regarding his alleged prejudgment of the dispute. (Tr., Sherrill Dep., Jan. 23, 2002, at 9–10.) Regardless, in light of the fact that Sherrill had performed, at the Hoefts' request and prior to the commencement of his role as arbitrator, the very calculation that was the substance of the parties' dispute, the District Court acted within its discretion in permitting MVL's counsel to depose him regarding the allegation of prejudgment. This does not mean, however, that MVL's counsel also should have been permitted to question Sherrill about the substance of his decision-making process. As it turned out, MVL's counsel did not question Sherrill regarding his alleged prejudgment of the EBITDA calculation, and MVL soon withdrew its prejudgment argument.

■ Thus, the crux of the parties' dispute regarding the deposition of the arbitrator involves the District Court's permitting MVL to examine him regarding his alleged manifest disregard of the law. Relying principally on our decision in *Andros,* the Hoefts argue, first, that manifest disregard of the law does not constitute the sort of "impropriety" about which an arbitrator could ever be deposed and, second, that even if manifest disregard were an impropriety, MVL did not present "clear evidence" that the arbitrator had manifestly disregarded the law. We agree with the Hoefts on both points.

While arbitrators may be deposed regarding claims of bias or prejudice, cases are legion in which courts have refused to permit parties to depose arbitrators—or other judicial or quasi-judicial decision-makers—regarding the thought processes underlying their decisions. For example, the Supreme Court long ago declared it "wholly improper" to submit the members of a state administrative board to an "elaborate cross-examination with regard to the operation of their minds." *Chicago, Burlington, & Quincy Ry. Co. v. Babcock,* 204 U.S. 585, 593, 27 S.Ct. 326, 51 L.Ed. 636 (1907). The Court explained its decision by reference to the rules regarding the questioning of other decision-makers:

> Jurymen cannot be called, even on a motion for a new trial in the same case, to testify to the motives and influences that led to their verdict. *So, as to arbitrators....* All the often-repeated reasons for the rule as to jurymen apply with redoubled force to the attempt, by exhibiting on cross-examination the confusion of the members' minds, to attack in another proceeding the judgment of a lay tribunal, which is intended, so far as may be, to be final, notwithstanding mistakes of fact or law.

*Id.* (emphasis added). Courts have consistently applied this rule to parties attempting to depose arbitrators regarding their decision-making processes. *See, e.g., In re Nat'l Risk Underwriters, Inc.,* 884 F.2d 1389, 1989 WL 100649, at *1 (4th Cir. Aug. 22, 1989) (unpublished table decision) (granting writ of mandamus to prevent deposition of arbitrator); *Sperry Int'l Trade, Inc. v. Gov't of Israel,* 602 F.Supp. 1440, 1443–44 (S.D.N.Y.1985); *Bliznik v. Int'l Harvester Co.,* 87 F.R.D. 490, 491 (N.D.Ill.1980) (noting that it would be "improper" to depose an arbitrator "in order to inquire into the reasoning that led to his award"); *Reichman v. Creative Real Estate Consultants, Inc.,* 476 F.Supp. 1276, 1286 (S.D.N.Y.1979) ("It is clear that Reichman seeks the deposition for the forbidden purpose: to probe the arbitrator's decisionmaking process."); *Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l,* 385 F.Supp. 634, 640 (D.D.C.1974) (declaring it inappropriate "to attempt to probe [an arbitrator's] decisional processes"), *rev'd on other grounds,* 530 F.2d 1048 (D.C.Cir.1976); *Martin Weiner Co. v. Fred Freund Co.,* 2 A.D.2d 341, 155 N.Y.S.2d 802, 805 (1st Dept. 1956) ("Inquisition of an arbitrator for the purpose of determining the processes by which he arrives at an award, finds no sanction in law."), *aff'd,* 3 N.Y.S.2d 806, 166 N.Y.S.2d 7, 144 N.E.2d 647 (1957).

An allegation that an arbitrator manifestly disregarded the law, unlike an allegation of bias or prejudgment, necessarily involves what the *Reichman* court appropriately dubbed the forbidden purpose: inquiring into the arbitrator's decision-making process. A manifest disregard claim involves both objective and subjective components. While the objective component looks to whether the governing law was well defined, the subjective component focuses on the substance of the arbitrator's decision-making process: whether

the arbitrator was aware of the governing law, and whether he consciously decided to ignore it. *See, e.g., Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 209 (2d Cir.2002). The subjective component of the manifest disregard standard, in particular, may not properly be broached in deposing an arbitrator. That is, the parties to a confirmation or vacatur proceeding may not depose an arbitrator regarding "the knowledge [that he] actually possessed," or whether he "appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it." *Id.* (quotation marks omitted).

■ A review of the transcript of the arbitrator's deposition makes clear that the bulk of the questioning probed this forbidden terrain. For example, MVL's counsel asked the arbitrator whether he understood that he was supposed to determine EBITDA in accordance with GAAP, whether he actually took GAAP into consideration in calculating EBITDA, what he understood the parties' intentions to be, and why he reached the conclusion that he did. These questions—while relevant to the manifest disregard inquiry—were inappropriate, as they were all designed to determine the processes by which the arbitrator arrived at his award. *See Martin Weiner*, 155 N.Y.S.2d at 805. While it may be difficult to prove the subjective prong of the manifest disregard standard without questioning the arbitrator, this fact does not change our result. *Cf. Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 430 (9th Cir.1996) ("Although it may be difficult to prove actual bias without deposing the arbitrators, deposition of arbitrators are [sic] 'repeatedly condemned' by courts." (citation omitted)). Permitting depositions of arbitrators regarding their mental processes would make arbitration only the starting point in

the dispute resolution process and deprive arbitration awards of the last word on their authors' intentions. *See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir.2003).

The Fourth Circuit confronted a nearly identical issue in *National Risk Underwriters*. In that case, following an arbitration award, the losing party sought to depose the arbitrator on the grounds that he had disregarded both the law and the parties' agreement. *Nat'l Risk Underwriters*, 1989 WL 100649, at \*2. After the district court ruled that it would permit the deposition, the Fourth Circuit granted a writ of mandamus preventing the deposition, drawing a distinction between allegations of manifest disregard and the sort of impropriety that may warrant an arbitrator's deposition. The court held, "It is clear that only when a non-prevailing party makes a clear showing of the arbitrator's fraud, misconduct, or bias could the district court properly grant that party's request to depose an arbitrator." *Id.* at \*3. Deposing an arbitrator regarding allegations of manifest disregard of the law, in contrast, "would impermissibly interfere with the arbitral decision-making process." *Id.* at \*1.

An arbitrator should be free to decide the dispute before him without fear that he will have to explain the basis for his decision, and how he arrived at it, at some later date. If the parties to an arbitration agreement want to know the arbitrator's reasoning, they may request that he include it in his award, as Sherrill did. Once an arbitrator issues an award, however, his role is complete and, like a judge or a jury, he may not be required to answer questions about why he reached a particular result.

Thus, while we do not believe that under the facts presented the District Court abused its discretion in permitting limited,

judicially controlled discovery regarding the allegation that the arbitrator had prejudged the dispute, the court should not have permitted MVL's counsel to depose him regarding his decision-making process. The court, therefore, should not have relied on the arbitrator's deposition testimony—which focused exclusively on manifest disregard, not prejudgment—in determining whether he had manifestly disregarded the law in rendering his award.[3]

### III. Manifest Disregard of the Law

We review *de novo* a district court's decision to vacate an arbitration award for manifest disregard of the law, as it turns entirely on questions of law. *See Westerbeke,* 304 F.3d at 208 & n. 7; *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 28 (2d Cir.2000), *cert. denied,* 531 U.S. 1075, 121 S.Ct. 770, 148 L.Ed.2d 669 (2001). Judicial review of an arbitration award for manifest disregard of the law is "severely limited." *GMS Group, LLC v. Benderson,* 326 F.3d 75, 81 (2d Cir.2003). The party challenging the award—in this case, MVL—bears the "heavy burden" of proving that the arbitrator manifestly disregarded the law. *Id.* Manifest disregard "clearly means more than error or misunderstanding with respect to the law," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986), and "[w]e are not at liberty to set aside an arbitrat[or's] . . . award because of an arguable difference regarding the meaning or applicability of laws urged upon [him]," *id.* at 934. As noted, a party seeking to vacate an arbitration award on the basis of manifest disregard of the law must satisfy a two-pronged test. The party must prove that: "(1) the arbitrator[ ] knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator[ ] was well defined, explicit, and clearly applicable to the case." *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 202 (2d Cir.1998) (citation omitted).

MVL attempts to satisfy the first prong of this standard by arguing that the arbitrator knew he was required to calculate Primary Year EBITDA in accordance with GAAP, knew that GAAP mandated a calculation favorable to MVL, and ignored GAAP in order to calculate Primary Year EBITDA favorably to the Hoefts. Primarily on the basis of the arbitrator's deposition testimony, the District Court agreed. *See* Order, Aug. 30, 2002, at 21 ("Sherrill's deposition testimony largely supports MVL's position."), 21–24, 26–27. For the reasons discussed in section II, *supra,* however, the District Court should not have permitted MVL to depose the arbitrator regarding the grounds for his decision, and the court should not have relied on his deposition testimony in determining whether he had disregarded GAAP. Significantly, the District Court acknowledged that, had it not taken the arbitrator's deposition testimony into consideration, "it would be possible to find that there is a barely colorable justification for the outcome reached and hence conclude that Sherrill did not manifestly disregard the law." (Order, Aug. 30, 2002, at 25–26 (citations, alterations, and quotation marks omitted).)

In defending the District Court's decision on appeal, MVL relies primarily on the arbitrator's deposition testimony and, to a lesser extent, on the text of the

---

**3.** Even if manifest disregard of the law were an "impropriety" that could warrant the deposition of an arbitrator, we would conclude, largely for the reasons discussed in part III, *infra,* that MVL did not submit, in advance of the deposition, clear evidence that the arbitrator had manifestly disregarded the law.

arbitration award itself. Without the benefit of the deposition testimony, however, MVL cannot show that the arbitrator knew that GAAP dictated a particular EBITDA calculation yet decided to ignore GAAP in calculating EBITDA. Contrary to MVL's contention, the arbitration award does not demonstrate the arbitrator's manifest disregard of the law. Rather, in resolving the one-time expense issues, the arbitrator explicitly relied on testimony from MVL's own expert accounting witness "that GAAP does not specifically define the phrase 'income from operations,'" as well as testimony from the Hoefts' expert "that GAAP can be preserved using more than one presentation of financial results." (Letter from Sherrill to Morris and Smith of 8/15/01, at 3.) The arbitrator's earlier draft award, which reached the same result as his final award, similarly relied on the Hoefts' expert's testimony "that the [one-time expenses] could have been presented as non-operating and still have been in conformity with generally accepted accounting principles." (Letter from Sherrill to Morris and Smith of 7/23/01, at 6.) Thus, the award proves neither that the arbitrator knew that GAAP required a decision in favor of MVL nor that he ignored GAAP in calculating EBITDA.

In *Bobker*, which involved analogous facts, we held that a panel of arbitrators had not acted in manifest disregard of the law in deciding not to enforce strictly the "net long" provision of SEC Rule 10b–4. The arbitrators' decision was based on their "serious doubts about the rationality and interpretation of the 'net long' proviso and how it serves the Rule's avowed purpose." *Bobker*, 808 F.2d at 936–37. Similarly, here, the arbitrator treated the one-time payments and calculated Primary Year EBITDA in a way that he determined best effected the parties' intent. The award indicates that the arbitrator

received conflicting evidence from the parties regarding the application of GAAP to the one-time payments, and that he adopted the Hoefts' proposed application because the parties "both understood that [the one-time expenses] would not recur in the future." (Letter from Sherrill to Morris and Smith of 7/23/01, at 6.) That is precisely what the parties hired Sherrill as arbitrator to do. *See Duferco*, 333 F.3d at 389 ("It should be remembered that arbitrators are hired by parties to reach a result that conforms to industry norms and to the arbitrator's notions of fairness."). Thus, we conclude that MVL cannot satisfy its burden of proving the first, subjective prong of the manifest disregard of the law standard.

MVL fares no better on the second prong of the standard. MVL argues that, for purposes of the EBITDA calculation, GAAP constitutes well-defined, explicit, and clearly applicable law. We are not persuaded. As it relates to this case, GAAP is not sufficiently well-defined or explicit to constitute "law" within the meaning of the manifest disregard standard. While we do not doubt that GAAP may, for some purposes, be sufficiently well-defined, explicit, and clearly applicable to satisfy the manifest disregard standard, *see Siegel v. Titan Indus. Corp.*, 779 F.2d 891 (2d Cir.1985), the relevant GAAP provisions do not satisfy that standard here. As the District Court noted, "[t]here is ... some evidence indicating that there was more than one way to calculate the One–Time Payments under GAAP, and that Sherrill followed a minority interpretation of GAAP." (Order, Aug. 30, 2002, at 25.) At the arbitration, both parties submitted evidence from accounting experts supporting their interpretations of the proper treatment of the one-time payments under GAAP. That MVL's position may represent a clear majority view is of

no consequence. *See Duferco*, 333 F.3d at 391 (stating that "even a 'barely colorable' justification for the outcome reached will save an arbitral award" (citation omitted)). As long as there is more than one reasonable interpretation of the governing law, the law is not well-defined, explicit, and clearly applicable, and an arbitrator cannot be said to have manifestly disregarded the law in rejecting either party's interpretation. *GMS Group*, 326 F.3d at 82–83 (holding that arbitrator did not manifestly disregard law in rejecting one party's proffered interpretation of applicability of NASD rules to facts of case); *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1217 (2d Cir.2002) (holding that governing law was unclear and that, "even if . . . the arbitrator erred in resolving the conflicting precedent . . ., the arbitral decision cannot be said to have exhibited a manifest disregard of the law").[4]

While the arbitration award may not have conformed to a majority interpretation of GAAP, the award is "supportable." *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 25 (2d Cir.1997); *see also GMS Group*, 326 F.3d at 82 (stating that "we will not find manifest disregard of the law where an arbitral award rests on the application of an unclear rule of law to a complex factual situation" (citation and internal quotation marks omitted)). Accordingly, the District Court erred in concluding that the arbitrator had manifestly disregarded the law.

## IV. Whether the Arbitrator Exceeded His Powers

 An arbitrator exceeds his powers when he "rule[s] on issues not present-ed to [him] by the parties." *See Fahnestock & Co. v. Waltman*, 935 F.2d 512, 515 (2d Cir.1991) (citation and quotation marks omitted); 9 U.S.C. § 10(a)(4). Section 10(a)(4) of the FAA "focuses on whether the arbitrator[ ] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[ ] correctly decided that issue." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 824 (2d Cir. 1997). MVL contends that the arbitrator exceeded his powers by calculating Primary Year EBITDA in accordance with his understanding of the parties' intent, rather than in accordance with GAAP. The District Court concluded that § 10(a)(4) does not provide a basis for vacatur of the arbitration award because "MVL's contention that Sherrill failed to apply GAAP is best characterized as a challenge to his application of the law, rather than a challenge under Section 10(a)(4)." (Order, Aug. 30, 2002, at 30.)

We agree with the District Court. MVL does not contend that the arbitrator resolved an issue that the parties' agreement did not authorize him to resolve. Indeed, the only issue that he resolved—the calculation of Primary Year EBITDA—was the precise issue that the Amendment authorized him to decide. (Amendment to Stock Purchase Agreement § 1(d); Letter from Sherrill to Morris and Smith of 8/15/01, at 4.) MVL does not argue that the arbitrator decided any issue other than the calculation of EBITDA; rather, MVL argues that he calculated EBITDA incorrectly. Even if MVL is

---

**4.** It is helpful to contrast the facts of this case with those of a case in which we found manifest disregard of the law. In *New York Telephone Co. v. Communications Workers of America Local 1100*, 256 F.3d 89 (2d Cir. 2001) (per curiam), we held that the arbitrator had manifestly disregarded the law by "explicitly reject[ing]" binding Second Circuit precedent in favor of more recent decisions of other circuits. *Id.* at 93. Sherrill, in contrast, did not explicitly—or even implicitly—reject GAAP. Rather, he simply rejected MVL's interpretation of GAAP, which was one of two permissible interpretations.

72

correct, however, that argument provides no basis for vacating the award under § 10(a)(4). *See DiRussa,* 121 F.3d at 824 ("DiRussa's real objection appears to be that the arbitrators committed an obvious legal error in denying him attorney's fees. Section 10(a)(4) was not intended to apply to such a situation."). Accordingly, the District Court correctly concluded that § 10(a)(4) does not provide a basis for vacating the arbitration award.

## CONCLUSION

For these reasons, we reverse the judgment of the District Court vacating the arbitration award and remand with instructions to enter judgment confirming the award, and for further proceedings consistent with this opinion.